JACOB BICHEL *et al.* V. ANNA OLIVER.

No. 15,479.   (95 Pac. 396.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Oral Agreement to Bequeath Property—Specific Performance.* Where a man and his wife, who have no children, orally agree that in consideration of a young girl's becoming a member of their family and giving to them love, obedience and service they will rear and treat her as their own child and at their death leave her all of their property, and there is full and faithful performance of the agreement by the girl, such agreement will be enforced by a court of equity, providing there are no circumstances or conditions which would render enforcement inequitable.

2. ——— *Proof of Oral Agreement.* Before an oral agreement will operate as a transfer of land it must appear that it is certain and definite in subject-matter and purpose and has been proved by clear and satisfactory proof, but it is not essential that it be established by direct evidence.

3. ——— *Same.* If the facts and circumstances brought out in the evidence, including the acts of the parties, are such as to raise a convincing implication that the contract was actually made and satisfy the court of its terms and performance, and that there would be no inequity in its enforcement, it is sufficient.

4. DEMURRER—*Petition.* The fact that more than one ground of recovery may be pleaded in the petition or that the grounds set up for recovery may not be entirely consistent with each other affords no reason for sustaining a demurrer which challenges only the sufficiency of the facts alleged.

Error from Washington district court; WILLIAM T. DILLON, judge. Opinion filed April 11, 1908. Affirmed.

*T. P. Roney,* and *J. W. Rector,* for plaintiffs in error.

*Fred Powell,* and *Charles Smith,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a suit by Anna Oliver against Jacob Bichel and his wife, also Jacob Bichel as executor of an estate, and the Citizens State Bank

of Haddam to set aside certain instruments purporting to affect the title to a tract of real estate formerly owned by Adolph Fredericks, and to quiet her title, which was based on an oral agreement to transfer the property to her on certain conditions, which she alleged had been substantially performed.

On issues formed between the parties a trial was had, and the court in substance found that for a long time before his death Adolph Fredericks was the owner of a quarter-section of land and occupied it as a homestead. His family consisted of his wife, Herman Fredericks, a brother, and the plaintiff, Anna Oliver, a granddaughter of his wife, whom they had taken into the family when she was only a few years old but had never formally adopted. His wife died in 1901, and his brother, who was an invalid during the last years of his life, died in 1903, leaving only Adolph and the plaintiff, and when he died in 1904 he left no wife, children or known heirs to inherit his estate. He and his wife had frequently expressed to their neighbors an intention to leave all of their property to Anna, because of their love for her and her faithfulness to them, but no contract to that effect was made with Anna's parents when she went to live with the Fredericks. Some time before Anna was married she had expressed an intention to leave the Fredericks home because of a disagreement with Herman Fredericks, and then Adolph and his wife urged her to remain and expressly agreed that if she would do so they would give her all of their property at their death. Anna married L. E. Oliver in 1895, with the approval of the Frederickses, and lived for a time on the Fredericks farm and continued to care for the old people as she did before her marriage. Later Anna and her husband moved to an adjoining farm, about a quarter of a mile away, and lived there until after the death of Mrs. Fredericks and until 1902. After the death of Adolph's wife he and Herman continued to live on the farm, and in September, 1902, Herman being una-

ble to leave his bed, Adolph renewed the agreement with Anna and her husband that if they would move upon the farm and care for him and his brother, Herman, as long as they lived Anna should have all of his property and should enter into possession of it at once. They accepted his proposition and immediately took possession of the farm, and have continued in possession of it ever since.

During the childhood of Anna the Frederickses sent her to the public school, and bestowed on her love and affection, and she in turn was obedient and kind to them, performing such household duties as are usually performed by girls of her years, and sometimes working in the fields. After her marriage, and while living on the farm, she continued to work and care for them, and after moving on the adjoining farm she washed, ironed and baked for the family and frequently performed other household duties. After Anna and her husband took possession of the farm in 1902 they cared for both Adolph and Herman, furnishing them with the necessaries of life until Herman died in 1903 and Adolph left their home in 1904. In April, 1904, and about eight months before Adolph died, he apparently became dissatisfied with their home and went to the house of Jacob Bichel, a brother of Anna, where he remained until his death. A few days before he died, and on December 7, 1904, he executed a deed to Jacob Bichel for the farm in controversy, the consideration named being one dollar, the support of the grantor during his lifetime, and a decent burial upon his death. On December 9, 1904, he executed a will purporting to give all of his property, real and personal, to Jacob Bichel, except a horse, which was given to others. He died on December 15, 1904, and the will was at once probated and Jacob Bichel was appointed as executor. On January 23, 1905, Bichel and his wife executed a mortgage on the farm to the Citizens State Bank of Haddam to secure a loan of $600, and at that time Anna and her husband were in pos-

session of the farm, a fact well known to Bichel and the officers of the bank. On these facts judgment was rendered in favor of the plaintiff and against all of the defendants.

An attack was made on the sufficiency of the petition by a general demurrer, which the court overruled, and it is renewed here upon the ground that the allegations as to the means employed by Jacob Bichel to induce Adolph Fredericks to execute the deed and make the will in his favor were not such as to constitute fraud or undue influence. In her petition the plaintiff set up an oral agreement between the Frederickses and herself under which she was to acquire the property, and also such performance of the agreement by herself as would take it out of the statute of frauds. These facts, if established by proof, were sufficient to warrant a recovery by her without regard to whether or not Jacob Bichel obtained the will and deed from Fredericks by fraudulent means. Fraud and undue influence in procuring the execution of these papers were set forth, it is true, but no question was raised by the defendants as to the propriety of coupling her claim based on these averments with her claim setting up the contract and its performance. No effort was made to have any of these allegations stricken out because of inconsistency or upon any other ground, nor was the petition challenged in any way except by the general demurrer for insufficiency of facts. That more than one ground of recovery may have been pleaded or that the grounds set up may not have been entirely consistent did not constitute reasons for sustaining the demurrer. The principal considerations in the case are, first, Was there a contract to the effect that if plaintiff would live with the Frederickses and become one of their family, rendering them such love, obedience and services as are due from a child, they would rear her as their own child and at their death give all of their property to her? and, second, Was the contract,

although oral, of such an equitable character and so far performed as to be enforceable?

The case as developed by the evidence falls fairly within the rule of *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743, 9 L. R. A., n. s., 229, wherein Mr. Justice Porter fully stated the reasons for the rule and cited many authorities sustaining it. If, as there held, the contract is sufficiently certain and definite in subject-matter and purpose and has been clearly and certainly established by the evidence, and the facts are such as to take it out of the operation of the statute of frauds, and there are no circumstances or conditions which would make enforcement inequitable, courts do not hesitate to give effect to a contract, although it is not in writing. An oral agreement that operates as a transfer of land must, of course, be made out by clear and satisfactory proof, but it is not essential that it be established by direct evidence. If the facts and circumstances brought out are such as to raise a convincing implication that the contract was made and to satisfy the court of its terms, and that there would be no inequity in its enforcement, it is enough. (*Anderson v. Anderson, supra; Edson v. Parsons,* 155 N. Y. 555, 50 N. E. 265.) This is especially true where, as here, the parol evidence is supplemented and supported by the acts of the parties. Aside from the frequent statements of Adolph Fredericks and his wife as to the relations between them and the child which they had taken into the family, and of their obligations to her, there was the direct agreement with Anna herself at the time she had trouble with Herman Fredericks, which made a reasonably clear and complete promise that Anna should have the land in consideration of the filial duties of love, obedience and services which had been and should thereafter be rendered to the Frederickses.

The defendants insist that there should be no relaxation of the rule requiring contracts of this character to be in writing, nor an exception made allowing the

transfer of land upon oral evidence. It cannot be said, however, that the evidence herein rests wholly in parol. The acts of Anna in performing her agreement, and of Fredericks in partially carrying out his agreement by putting her in possession of the land, throw considerable light on the character of the contract and strongly support the parol proof. Besides, the statute of frauds, invoked by defendants, should never be allowed to accomplish fraud, and, according to the facts and the findings of the trial court, a failure to enforce this contract, after performance by the plaintiff, would be a fraud upon her. As to her the contract was fully executed. The services were rendered and her part of the contract performed during the lifetime of Adolph Fredericks. Her services in the family and her care and ministrations to the old people were not intended to be measured by any financial standard, and, as the court found, there is no measure by which she can be adequately compensated for the things she has done, nor would there be any estate from which she could be paid, if this action should fail. It is true there is some conflict in the evidence—some testimony that discredits that of the plaintiff and the theory upon which she recovered; but the testimony which the court appears to have believed, and which in view of its findings must be accepted as true by this court, abundantly justifies the decree enforcing the contract. There is nothing substantial in the objections made to the admission of testimony upon which the findings are based.

The bank, which holds the mortgage given by Jacob Bichel, is in no better position than he occupies. At the time the mortgage was given the plaintiff and her husband were in actual possession of the land, a possession which they had held for considerable time and which was known to the officers of the bank. That open possession made it necessary for the bank to inquire as to the ownership of the land and the right of Bichel to execute a mortgage upon it. An inquiry

would have disclosed that a binding contract had been made with the plaintiff and that Bichel had no interest in the land nor any right to encumber it.

The judgment of the district court is affirmed.