No. 19,225.

MINNIE C. SCHOLZ and CHARLOTTE L. HOTH, *Appellees*,
v. HENRY F. HOTH, *Appellant*.

SYLLABUS BY THE COURT.

1. ORAL AGREEMENT—*Between Father and Son—Legal Title to Land Held by Father—Equitable Title in Son—Question of Fact for Jury*. The evidence examined and held sufficient to warrant the submission to the jury of the question whether or not a tract of land was purchased under an agreement between a father and son that the son should own the land and that the legal title should be held by the father, to whom the land was deeded, until a portion of the purchase price advanced by the father was repaid.

2. SAME—*Evidence*. It is not essential that the agreement referred to be established by direct evidence. It may be inferred from facts and circumstances.

3. SAME—*Interest of Wife in Land to Which Her Husband Has Naked Legal Title*. Should the agreement be established, upon the death of the father his widow would have no interest in the land under section 2942 of the General Statutes of 1909, providing that one-half in value of all real estate in which the husband at any time during the marriage had a legal or equitable interest, not sold at judicial sale, not necessary for the payment of debts, and of which the wife has made no conveyance, shall be set apart as her property in fee simple.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed February 6, 1915. Modified.

*Frank L. Martin*, and *Van M. Martin*, both of Hutchinson, for the appellant.

*C. M. Williams*, of Hutchinson, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was commenced by Minnie C. Scholz and Charlotte L. Hoth, respectively the daughter and widow of William Hoth, deceased, against Henry Hoth, son of William Hoth, to recover a tract of land, and for other relief. The jury returned a verdict against the plaintiff, Minnie C. Scholz, and in favor of

the plaintiff, Charlotte Hoth. Judgment was rendered accordingly, and the defendant appeals from the portion of the judgment adverse to him.

William Hoth purchased the land in controversy in 1893 for the sum of $1700, and retained the legal title at the time of his death, which occurred in 1905. About a year before his father's death, Henry Hoth married and moved upon the land. He has occupied it ever since as his home, except that sometime after his father's death, at the solicitation of his mother and sister, he moved to the farm which they occupied and which had belonged to his father, known as the "home place," and from there farmed the two tracts for several years. In November, 1910, Henry procured his mother and sister to execute and deliver to him a deed of the land in controversy. Charlotte Hoth was old and forgetful, and Mrs. Scholz brought the action without consulting her mother, for the purpose of canceling this deed.

Evidence was introduced relating to the mental capacity of Charlotte Hoth, and relating to undue influence and duress practiced on both plaintiffs by the defendant, and the court submitted to the jury the question of the validity of the deed, with the result stated. The defendant assigns some trial errors relating to this branch of the case which this court regards either as not well founded or as not prejudicial, and so far as the judgment sustains the deed as to Mrs. Scholz and sets aside the deed as to Mrs. Hoth, it will not be disturbed.

Henry Hoth pleaded facts showing that the land was originally purchased for him under a verbal arrangement with his father, whereby he became and was the owner in fact, the legal title being held by his father as security for a portion of the purchase price. Evidence was offered tending to sustain this claim, but the court refused instructions asked by the defendant submitting the question to the jury, doubtless on the ground that the evidence was not sufficient to warrant more than a

finding that William Hoth had intended to give the land to his son but had not vested him with title. This court is inclined to believe the jury should have been allowed to pass upon the matter.

Without attempting to state all the facts which the jury might have taken into consideration and all the favorable inferences which might have been derived from proved facts, it appeared that Henry Hoth furnished $125 of his own money as a portion of the consideration paid for the land. His father borrowed all, or substantially all, of the remainder of the consideration. Henry was then sixteen years old. When Henry was twenty-six years old he married, and by this time he had repaid all the money advanced by his father by work upon his father's farm. All the evidence is that Henry was a good worker and worked faithfully upon his father's farm from the time he was twelve years old until he married. When he was about eighteen or twenty years of age he undertook to run the business of his father's farm, which consisted of farming and buying and selling stock, and for the last seven or eight years that he was on his father's farm he bore all the responsibility because of his father's poor health. There is no evidence that he ever received any compensation for work done after he became of age. Upon his marriage Henry's father told him, in the presence of his wife, the place was his own and to go ahead and improve it. He then took possession. The land when purchased was vacant, unimproved, sandy land which had to be protected and fertilized to make it productive. Henry built a house and barn, planted trees, erected fences, and hauled hundreds of loads of manure upon the land, so that it is now worth in the neighborhood of $10,000. At no time before his father's death did his father make any claim to the land or claim that Henry owed anything for the land, and no claim that he owed anything for the land has been made by his mother or sister since his father's death. Neighbors testified that they had often heard William Hoth speak

of the land, and that he always referred to it as Henry's place. His mother testified that she thought Henry's father gave the place to him and that she thought Henry had a deed to the place. His sister testified she knew Henry's father told him he was to have the place and that it was her father's intention to give him a deed. There never was any dispute or difference respecting Henry's claim of ownership until after his sister's marriage, and the trouble then arose between Henry and his sister's husband.

From the foregoing outline of the evidence favorable to the defendant it is clear that if such evidence were believed ownership in Henry Hoth was well established. The trial court's difficulty doubtless lay in conceiving a statement of the conditions under which ownership was acquired. The jury, however, might well have found the terms of the purchase in the evidence narrated—a purchase for Henry and in part with Henry's money, the remainder of the purchase money borrowed by William Hoth, to be repaid in a manner possible for Henry, and title taken in William Hoth, to be held until he was repaid.

In the case of *Lyons v. Berlau,* 67 Kan. 426, 433, 73 Pac. 52, it was held that an agreement relating to the title to land may be inferred from circumstances. In the case of *Bichel v. Oliver,* 77 Kan. 696, 95 Pac. 396, it was said:

"An oral agreement that operates as a transfer of land must, of course, be made out by clear and satisfactory proof, but it is not essential that it be established by direct evidence. If the facts and circumstances brought out are such as to raise a convincing implication that the contract was made and to satisfy the court of its terms, and that there would be no inequity in its enforcement, it is enough." (p. 700.)

It is contended that a new trial of the issue just discussed should not be granted because if found in favor of the defendant Charlotte Hoth would still have the same interest in the land which the judgment

rendered leaves her, by virtue of the statute which reads as follows:

"One-half in value of all the real estate which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executor as her property in fee simple, upon the death of her husband, if she survives him." (Gen. Stat. 1909, § 2942.)

The case of *Flanigan v. Waters,* 57 Kan. 18, 45 Pac. 56, is cited in support of this contention. In the Flanigan case a period of time elapsed after the purchase of land by a donor for a donee before the gift to the donee became effective. Consequently a majority of the court held the statutory interest of the donor's wife attached. In this case, assuming the defendant's position to be true, there was no gift of the land in the proper sense of that term, and William Hoth at no time had any beneficial ownership of the land by title either legal or equitable. He merely held the title to protect his advancements, on account of his son's minority and means of making payment. Henry Hoth was in fact the owner of the land from the beginning, and his father's position was substantially that of a mortgagee, and, of course, the statute has no application to such a relation.

The judgment is modified in accordance with this opinion, and the cause is remanded for a trial of the single issue respecting the defendant's claim of ownership.