Fair v. Nelson.

---

No. 19,584.

IDA FAIR, *Appellee,* v. J. W. NELSON and P. A. NELSON, *Appellants.*

### SYLLABUS BY THE COURT.

ORAL CONTRACT—*Agreement to Give Property to Niece in Consideration of Services—Insufficient Evidence.*  The evidence examined and found to be insufficient to sustain the claim of a contract to give property at the death of the owners to a girl who made her home with them from the time she was seven years old until she was eighteen, in consideration of her services.

Appeal from Reno district court; F. P. HETTINGER, judge *pro tem.*  Opinion filed June 12, 1915.  Reversed.

*C. M. Williams,* of Hutchinson, for the appellants.

*F. L. Martin, H. S. Lewis, W. G. Fairchild,* and *Van M. Martin,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to obtain two lots on Avenue B, East, in the city of Hutchinson.  In form the petition was one to compel specific performance of an oral contract to make the plaintiff an heir, liquidated by another oral contract to

give the property sued for, made by the deceased parents of the defendants. The cause was tried before a jury. A demurrer to the plaintiff's evidence was overruled, a general verdict and some special findings of fact favorable to the plaintiff were returned, judgment was entered accordingly and the defendants appeal.

John Nelson, his wife, and two sons lived on a farm some twelve miles south of Hutchinson. In 1882 the plaintiff, the daughter of Mrs. Nelson's sister, came from Sweden to live with them. The plaintiff was then seven years old, and she declares in her petition that she had a contract with her uncle and aunt that in consideration of her services until she was eighteen, which she values at $3000, she was to share their estate, now valued at from $40,000 to $50,000, with their sons at their death. The Nelsons gave the plaintiff a home, sent her to school, and reared her as a member of the family until she was seventeen years old, when she married. She stayed with them another year, however, until her first child was born, and then moved to an adjoining tract of land. Some ten or eleven years afterward the Nelsons moved to town. The Avenue B property was purchased in 1888, and later a house was moved on it. The plaintiff says in her petition that a contract supplemental to but forming a part of the original contract was made whereby she was to have this specific property "and that said property was acceptable to plaintiff as recompense for her services." No date for either of the contracts is fixed. John Nelson died in 1910 and his wife died in 1911. One of the sons, P. A. Nelson, was willing the plaintiff should have the Avenue B property, which is worth about $2500, but his brother, J. W. Nelson, was not.

The plaintiff produced no proof authorizing the jury to infer that either one of the alleged contracts had ever been made with her. There was proof enough that Mr. and Mrs. Nelson intended that the plaintiff should have some of their property after their death. The defendants introduced in evidence a paper in their father's handwriting expressing a desire that the plaintiff should have "the house on lots where Winans live" which was not the Avenue B property. This paper did not refer to any obligation arising out of contract and all the proof was of an intention not based on any contract and an intention

never legally executed.   Here are samples of the plaintiff's evidence relating to statements made by Mr. and Mrs. Nelson:

"I had a conversation with John Nelson, he said he was going to give the property on Avenue B, a house and some lots to Ida [the plaintiff] for her services on the place. . . . He would always speak of Ida as his child and he often made the remark that when he was gone he wanted her to have a share of what was left, that property on East B. . . . He said he gave John a farm, Pete a farm, and Ida some property in town, a lot and house, he said he aimed for her to have that at his death. . . . Mrs. Nelson told me the same, that Ida was to have that at her death after grandpa died. . . . She spoke of their property over on B . . . and she said that was to be Ida's. . . . When I said this about the will, why she did n't make a will, she said Ida was to have the property on B, and I said 'why don't you make a will?' and she said 'it would be all right with the boys.' . . . I can remember hearing him say that they expected to look after her, and regarded her the same as they did their own children.   Then I heard one of them, perhaps both of them, say that the house on B, they always counted that as Ida's house."

The plaintiff's daughter said her "grandmother" told her of a paper her "grandfather" had written "giving this property to mamma" but nothing about any contract.   While there seem to have been writings none were ever delivered to the plaintiff in discharge of Mr. and Mrs. Nelson's contract for $3000 worth of services which the plaintiff performed by living the life of a girl in a country home more than twenty years ago.

It is not necessary to review the decisions of the court in cases of this character, extending from *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743, to *Scholz v. Hoth,* 94 Kan. 205, 146 Pac. 339, decided in February of this year.   The plaintiff's case depended upon a contract and she failed to produce evidence from which a contract might be legitimately inferred, or, as the plaintiff prefers to say, "implied."

The judgment of the district court is reversed and the cause is remanded with direction to sustain the demurrer to the plaintiff's evidence.