No. 21,746.

STELLA V. PANTEL, *Appellant,* v. FLORENCE J. BOWER, *Appellee.*

SYLLABUS BY THE COURT.

SPECIFIC PERFORMANCE—*Agreement to Take Child into Family to Raise— Contract that Child Should Inherit Not Proven.* In an action for the specific performance of an alleged agreement between the plaintiff's mother and the defendant, when the plaintiff was two years old, by which defendant agreed that she and her husband would take plaintiff into their home, raise and treat her as their own child, and upon their death she should inherit from them or either of them the same share of their property and in the same manner as though she were their own child and they should die intestate, *held,* on the facts stated in the opinion, that a demurrer to the plaintiff's evidence was rightly sustained.

Appeal from Geary district court; ROSWELL L. KING, judge. Opinion filed January 11, 1919. Affirmed.

*L. B. Morris,* of Junction City, *Lee Monroe, James A. Mc-Clure,* and *C. M. Monroe,* all of Topeka, for the appellant.

*J. V. Humphrey,* and *A. S. Humphrey,* both of Junction City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a ruling sustaining a demurrer to the plaintiff's evidence. The action was for specific performance of an oral contract under which plaintiff claims the right to one-half of all the property owned by the husband of Mrs. Bower at the time of his death.

The plaintiff's real name before her marriage was Stella Ertz. When she was two years old she was taken into the family of defendant and raised and treated by Mrs. Bower and her husband as their own child. She went by the name of Stella Bower; believed until she was about fifteen that Mr. and

Mrs. Bower were her parents, and only learned the truth when she received a letter from a sister which caused her to make inquiries of Mrs. Bower.

Mr. Bower was a farmer, and the plaintiff worked on the farm doing not only the ordinary work about the house, but assisting him in plowing, harrowing, cultivating in the fields, and in feeding and attending live stock. The last few years she was there she performed generally the work of a hired man. She received no compensation for her services, other than her board and clothing. In January, 1917, when the plaintiff was about twenty years old, Mr. Bower died intestate, leaving no heirs at law except his wife. He owned real estate and personal property valued at about $10,000. Mrs. Bower at once asserted ownership of all the property and sold the personalty. She gave plaintiff 100 bushels of corn, which plaintiff claims she understood was to be only a partial payment for her work after she arrived at the age of eighteen. In February, 1917, Stella married, and she and her husband offered to continue on the farm with Mrs. Bower and to help with the work; Mrs. Bower declined the offer, stating that she didn't need plaintiff any longer.

The petition alleges an oral agreement between the plaintiff's mother and Mrs. Bower, when the plaintiff was two years old, by the terms of which Mrs. Bower agreed that she and her husband would take plaintiff into their home, give her the same love, care and education as though she were their child, and "upon their death she would inherit from them or either of them, the same share of their property in the same manner as though she were their own and only child and they should die intestate."

The petition alleged full performance of the agreement on plaintiff's part, and that after Mr. Bower's death, Mrs. Bower had taken possession of the property and exercised control over it. Plaintiff asked for a decree impressing a trust in her favor upon one-half of the real estate until the death of Mrs. Bower. Plaintiff also alleged in the petition that her services for the last ten years she resided in the family were worth $200 a year, and asked judgment for $2,000. On the motion of defendant, the court compelled her to elect whether she would proceed upon the theory that she was entitled to a share of the property,

or for the value of her services; she elected to rely upon the contract for a child's portion of the property. The petition contains allegations to the effect that at different times while plaintiff lived with Mr. and Mrs. Bower, both before and after her discovery that she was not their natural child, they ratified and confirmed the agreement made with her mother for her use and benefit, and further agreed with plaintiff that upon the death of either of them she would inherit the portion of the estate of the deceased foster parent in the same manner and to the same extent as provided by law in the case of a child whose parents die intestate.

The answer was a general denial, with the admission that since plaintiff was two years old she had lived in the family of the defendant and her deceased husband, during all of which time they had treated her kindly and indulgently as though she were their own child, but that she had never been legally adopted.

The only evidence offered by plaintiff tending to show what the arrangement was between her mother and Mrs. Bower consisted of the testimony of an elder sister of plaintiff, who said she heard the conversation between her mother and Mrs. Bower, in which the plaintiff's mother stated she would surrender the custody and possession of the plaintiff to Mrs. Bower upon the condition that "they would educate, rear, treat and bestow upon her the affection of an own natural child," and that defendant stated she would accept the custody of plaintiff on those conditions, and that plaintiff "would thereafter inherit from them the same share of the property and estate which they owned, and in the same manner as though she were their own natural-born child." Several neighbors of the defendant gave testimony, the substance of which is fairly illustrated by that of Mrs. Carmean, whose testimony as to conversations with Mr. Bower was, "He said they had taken the little girl when she was but two years old and . . . raised her as their own, and that when he was gone she should have his share of the property." The plaintiff testified that after she first learned who her parents were, "Mrs. Bower said if I would stay with them and consider them my own parents and help them to do the work, that I was to have what was left when they were gone"; that at another time Mrs.

Bower said: "If you will stay with us and save the necessity of hiring a man, there will be that much more left  .  .  . when we are gone, for you. I said, 'all right' "; that once when she and Mrs. Bower had been out sawing wood and had come into the house to warm their fingers at the stove, Mrs. Bower said: "I know it is hard work, but if we can do it ourselves there will be that much more left for us when Mr. Bower is through  .  .  . is gone."

Referring to her acceptance of the 100 bushels of corn, plaintiff testified that Mrs. Bower asked how much she wanted for her work, "and I told her I didn't know, and after a while she told me she would give me 100 bushels of corn. I told her she didn't need to mind, she could pay me when she was all through, and when she was gone I could get what was left, as they had promised me. She said I had better take what I could get then, because I didn't know what would be left when they were gone." Plaintiff also testified that her understanding was that the corn she received was to pay for her services from the time she was eighteen. This settlement was after the death of Mr. Bower.

When plaintiff was a child, her foster father gave her a pony which she was allowed to call her own. After his death, the defendant sold it for $90, and at the trial she testified that, although the plaintiff had always claimed the pony, she had frequently told her it was not hers. A third cause of action for the value of the pony was submitted to the jury, and a verdict returned in plaintiff's favor.

The testimony of the neighbors concerning statements made by Mr. Bower in casual conversations with them, show mere statements of his intention that when he was gone Stella should have his share of the property. They did not show the existence of the contract relied upon by the plaintiff, and are not of themselves sufficient to raise an implication that any contract of that character existed. (*James v. Lane*, 103 Kan. 540, 175 Pac. 387.) The testimony of plaintiff's sister tended to support the claim in the petition that plaintiff was taken into the family of the defendant with the understanding that she would be treated as the natural child of Mr. and Mrs. Bower, and that at their death she should inherit as a natural child. But a parent may disinherit his own child; and evidence tending

to show that the child has rendered valuable services to the parent is not sufficient to raise an implication of a contract not to disinherit. If Mr. Bower had desired to carry into effect the intention expressed in his lifetime, that plaintiff should receive his share of the property, there were two very easy methods by which to accomplish such intention—he could have made a will in her favor, or he could have taken the necessary steps for the legal adoption of the plaintiff as his own child; and then upon his death intestate she would have acquired a child's portion of his estate.

The rule adhered to in cases of this general character is, that there must be facts and circumstances sufficient to raise a convincing implication that the contract was made, and to satisfy the court of its terms; and there must be no inequity in its enforcement. (*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743; *Bichel v. Oliver,* 77 Kan. 696, 95 Pac. 396; *James v. Lane,* supra.) Until plaintiff was more than fourteen years of age she believed that the defendant and Mr. Bower were her natural parents. It cannot be said she failed to show equitable considerations in her favor. She was given less than four years of schooling; when she should have been in school she was plowing corn, and from that time until she was past twenty years of age she performed the labor of a hired man in the fields. Her years of faithful service and arduous labor doubtless assisted largely in the accumulation of the property possessed by the defendant; but under the authorities cited there must be more than mere equitable considerations shown.

The plaintiff fails because the most that can be said is that her evidence tended to show an agreement that she should be treated as the natural child of Mr. and Mrs. Bower. The demurrer was rightly sustained.

There remains the question whether the court erred in compelling plaintiff to elect between the two remedies—the one upon the oral contract, the other upon an implied contract for the value of her services. If the two remedies are inconsistent, she ought not to be permitted to speculate upon the evidence, and make her election after the evidence had been introduced. Her cause of action on the alleged oral contract is based upon the theory that upon the death of Mr. Bower the title to one-

half of his property passed to her, subject to a life estate in the defendant. Her claim that she is entitled to recover on an implied contract for the reasonable value of her services, is based upon the theory that no interest whatever in the property passed to her upon the death of Mr. Bower; that the title to all of it vested immediately in the defendant, subject to the plaintiff's claim, as a debt against the estate, for the value of her services. The two remedies are inconsistent. (*James v. Lane*, supra.)

The judgment is affirmed.