No. 26,416.

MYRA HUTCHINSON, *Appellee,* v. J. M. HUTCHINSON et al., *Appellants.*

### SYLLABUS BY THE COURT.

QUIETING TITLE—*Oral Contract With Deceased Owner—Evidence—Sufficiency.* One who seeks to quiet title to real property and claims to hold it under a verbal contract made with the owner prior to his death, must prove a contract with him by which he agreed to give, grant, convey, or otherwise transfer the property to the one claiming it; proof of the owner's intention or desire to do any one of those things is not sufficient.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed January 9, 1926. Reversed.

*R. B. Smith,* of Erie, and *C. M. Brobst,* of Chanute, for the appellants.
*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an action to quiet title to real property. Judgment was rendered in favor of the plaintiff, and the defendants appeal.

The plaintiff alleged:

."That said defendants and each of them claim to have some right, title and interest in or to said land by reason of the fact that they are heirs at law of Charlotte Hutchinson, deceased, from whom the said property was conveyed to the plaintiff in consideration of maintenance and support."

The answer put in issue all the material allegations of the petition.

Quieting Title, 32 Cyc. p. 1329 n. 68.

The plaintiff sought to prove an oral contract between herself and her mother, Charlotte Hutchinson, by which the latter agreed that at her death the plaintiff should have the property in controversy. There was no will devising the property to the plaintiff. No deed from Charlotte Hutchinson to the plaintiff was introduced in evidence. No written contract between them was shown concerning the real property. One witness testified in substance as follows:

"That on different occasions she had heard the mother say that the others would not stay with her, and that Myra should be well paid for her staying with her, and that the mother's attitude toward Myra was most pleasant, and as far as she knew there had been no dispute of any kind in the home. . . . That the witness at no time heard Mrs. Hutchinson, mother of the plaintiff and defendants, discuss what she was going to do with her property."

Another witness testified:

"Mrs. Hutchinson said that Myra had been good to her, and was the only one that ever stayed with her, and that when she was through with the property she expected Myra to have the home. . . . that she intended that Myra should have the home."

A third witness testified:

"That Mrs. Hutchinson said she had one child who seemed to love her more than all the rest; that she had stayed with her and worked for her convenience; that Myra had fixed the lights and water in the house so that it would be convenient for her and Myra also . . . that Mrs. Hutchinson at that time said that she thought when she was done with the property the ones that stayed the closest were the ones that ought to have the property; at any rate, that was the way she felt about it."

The plaintiff testified:

"That she heard a conversation between her mother and her sister Emma relative to this matter and relative to the property interests; that she heard her mother state that Myra had stayed with her, and the rest of them had not, and that she was going to see that Myra had the home."

On cross-examination, the plaintiff further testified:

"That witness remembers very distinctly the conversation had between her mother and her sister, Emma, about it being the intention of her mother that she, Myra, should have the home property . . . that to the best of witness's knowledge her mother did not change her mind about the property, except that she made a will, and that the witness always remembered that she was to have the home place."

The will mentioned by this witness was not introduced in evidence. Under repeated declarations of this court, the evidence was not sufficient to prove that a contract had been made.

*Pantel v. Bower,* 104 Kan. 18, 178 Pac. 241, was based on facts very similar to those involved in the present action. There the court said:

"The testimony of the neighbors concerning statements made by Mr. Bower in casual conversations with them, show mere statements of his intention that when he was gone Stella should have his share of the property. They did not show the existence of the contract relied upon by the plaintiff, and are not of themselves sufficient to raise an implication that any contract of that character existed." (p. 21.)

In *Nash v. Harrington,* 110 Kan. 636, 205 Pac. 354, after reciting evidence which tended to show an intention that the one there claiming the property should have it, the court said:

"There was much of this sort of testimony, but does that prove an agreement between two parties which may be enforced in equity? We think not. It merely shows how greatly Harrington appreciated his daughters, and what, at those particular times, were his intentions towards them." (p. 643.)

The most that can be said for the evidence introduced by the plaintiff is that it tended to show that Charlotte Hutchinson intended that upon her death, the plaintiff should have the property in controversy. It did not tend to prove a contract, although that evidence would have been competent if it had been introduced to corroborate other evidence which tended to show that a contract had been made.

The judgment is reversed, and the trial court is directed to enter judgment for the defendants.