No. 27,941.

HATTIE LORENA BOWEN, *Appellant,* v. ANNA GALLOWAY et al.,
*Appellees.*

(264 Pac. 1038.)

**SYLLABUS BY THE COURT.**

1. SPECIFIC PERFORMANCE — *Part Performance of Oral Contract to Convey
Land—Evidence.* In an action for the specific performance of an alleged
oral contract by a mother to give one of her daughters of a family of eight
a farm which was substantially all the property owned by the mother, in
consideration that the daughter would remain on the farm, cultivate and
care for it, pay certain indebtedness against it and live with and care for
the mother as long as she should live, the trial court upon disputed evidence
rightly held against the existence of a valid contract.

2. SAME—*Part Performance of Oral Contract to Convey Land—Sufficiency of
Evidence.* To enforce such a contract it must appear that it is definite in
its terms and purposes, established by clear evidence that causes a con-
vincing implication that it was actually made, and is such as to satisfy the
court of its terms and performance and that there is no inequity in it.

3. SAME—*Sufficiency of Evidence.* Upon an examination of the evidence it is
held that the finding and judgment of the court denying the relief asked by
plaintiff and refusing specific performance of the alleged contract is suf-
ficiently supported by the evidence.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed
March 10, 1928. Affirmed.

*John J. Riling* and *Edward T. Riling,* both of Lawrence, for the appellant.
*George K. Melvin* and *R. E. Melvin,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action for the specific performance
of a verbal contract alleged to have been made between the plain-
tiff, Hattie Lorena Bowen, and her mother, Eleanor Katherman,
under which the plaintiff claimed that she had become the owner
and entitled to the possession of an eighty-acre farm in Douglas
county. The plaintiff pleaded that her mother owned the farm and
that a contract had been made between them, in substance that
sometime in 1905 her mother agreed that if plaintiff would remain
on the farm, cultivate it and raise crops thereon, care for the live

Appeal and Error, 4 C. J. p. 900 n. 98. Specific Performance, 36 Cyc.
pp. 548 n. 41, 646 n. 13; 2 L. R. A. n. s. 221; 22 A. L. R. 1055; 25 R. C. L. 218.

stock, and from the proceeds of the farm pay a mortgage thereon of $1,050, pay the funeral expenses of plaintiff's father, who died shortly before that time, and should pay certain debts left unpaid by her father, and further should care for her mother as long as she lived, giving her such care as a daughter usually gives to a mother, the farm should become the property of the plaintiff upon the death of her mother. The heirs of Eleanor Katherman, other than plaintiff, were made defendants, and several of them joined in an answer denying the averments in plaintiff's petition, set out the various interests that the heirs had in the farm, and demanded partition. The cause went to trial before the court without a jury, and upon the evidence produced by the respective parties the court found that the allegations of the plaintiff's petition were not true and that she was not entitled to specific performance nor any other relief, and that the land in question descended to the parties to the action in shares that were set out. Costs were adjudged in favor of the defendants and partition of the property was ordered. The plaintiff appeals, and the substantial question raised is that the decision of the court is contrary to the evidence.

An inspection of plaintiff's brief discloses that it challenges no procedural errors, but is confined to a discussion of the testimony and urges that it preponderates greatly in favor of the plaintiff, required a judgment sustaining her claim, and that therefore the decision was contrary to law. The plaintiff produced testimony to the effect that persons had heard her mother say that plaintiff should have the farm after she got through with it. Plaintiff's husband testified that he heard Mrs. Katherman say "when she died Hattie [the plaintiff] was to have the farm," but nothing was said about a contract having been made to that effect. Another witness said that Mrs. Katherman told her that after she was gone Hattie was to get the farm, that Hattie had helped her to pay off the mortgage and the back debt. Another witness testified that Mrs. Katherman in talking to plaintiff and another daughter said if they would stay at home with her and help pay off the mortgage she would divide the farm between them, and one daughter said that she could not stay, when Mrs. Katherman stated, "Which one stays gets the place when I am through with it at my death." Still another testified that she heard Mrs. Katherman say she had given Hattie the place. On cross-examination that witness was asked if she had heard Mrs. Katherman say that she had made a bargain

of that kind with Hattie, and answered, "She didn't call it a bargain exactly, she just said when she was done with it it would go to Hattie." To the question, "She didn't say whether she and Hattie had a contract to that effect?" the witness answered, "She never spoke of a contract."

There was testimony tending to show that plaintiff was living in the home when her father died in 1905, and that she remained there and helped her mother care for the home and in the management of the farm until plaintiff was married in 1908. It appears that she and her husband then rented the farm upon the basis that they would pay as rental two-fifths of the product of the farm to the mother and retain the remainder. They lived in the home with plaintiff's mother, and operated the farm on a rental basis up to and including the year 1912. Thereafter plaintiff and her husband moved away and rented a farm a few miles distant which they worked for a period of two years, when they moved to another farm in the vicinity and operated it for three years, and then moved upon another rented farm about three miles away where they lived until the death of plaintiff's mother.

There is testimony that during these periods plaintiff went home occasionally, as often as two or three times a week, and when there she assisted her mother in various ways. No writing of any kind was produced tending to show the making or existence of a contract. Plaintiff did introduce evidence to the effect that her mother had at one time made a will, which those who saw it said it contained a devise of the farm to plaintiff. The will it appears had been deposited with the probate judge of the county; but after being there for a time it was withdrawn by plaintiff's mother and taken to her home and placed in a drawer of a dresser. After her death a search was made for the will, which was unsuccessful, and it has never been found. There is nothing in the record to show whether it was purposely destroyed by the maker or what became of it. There was no attempt to prove or establish a lost will, and manifestly the evidence was introduced to show that the mother of plaintiff at one time had in mind a purpose to give the property to her.

It was shown that in 1905, when Mr. Katherman died, there was a mortgage on the farm of $1,050, an obligation for funeral expenses and a few other items of indebtedness, amounting in all to about $1,300. These obligations it was shown were paid out of the

products of the farm. The plaintiff took an active part in helping her mother care for the home and the farm and gave her such attention and care as a loyal daughter usually gives to a mother. It further appears that shortly after her father's death plaintiff left the home and worked in a telephone exchange and in business houses, which took her away from home at least three winters.

Mrs. Katherman, the mother, was in good general health and gave personal attention to the management of the farm. She made the contracts for the rental of the place and collected the rents from the tenants. She also employed mechanics to make improvements on the place, including the building of corn cribs, repair of outbuildings, and these services were paid for by Mrs. Katherman herself. The employees and tenants testified that none of the contracts were made by or through the plaintiff, but that they dealt directly with the plaintiff's mother. One of the tenants who had operated the farm for ten years said he never had any dealings with the plaintiff or received any directions from her as to the crops to be planted, but had all his dealings with Mrs. Katherman, and paid all rents directly to her.

The testimony tends to show that Mrs. Katherman was a vigorous, independent and capable woman, who gave close attention to her business and the operation of her farm. It is true she was unlettered and could not read or write. She intrusted the plaintiff, when at home, to attend to her banking business and the writing of checks, but it is conceded that she collected and handled the money that was deposited in the banks. As to the matter of writing checks, there was testimony that in 1917 Mrs. Katherman had paid each of her children $200 with checks, and smaller amounts later to her grandchildren. These were prepared by plaintiff, and on the lower corner of each she had written the words, "Paid in full of her estate"; and this indorsement it is argued showed that Mrs. Katherman intended these amounts to cover any interest the children might ever claim in the estate after her death. It may be stated that there is evidence to the effect that plaintiff, who drew the checks said that these checks which were given to the children eight years before Mrs. Katherman's death, "were presents from Grandma."

Mrs. Katherman had, it appears, seven daughters and one son, as well as several grandchildren, her heirs, and interested in her estate, but it is clear that plaintiff was at home a longer time and rendered more service to the mother than any of the other heirs.

It was shown, however, that others of her children came home frequently and visited the mother, and once when she fell and was injured two of her daughters came home and cared for her for several weeks. The important question and the turning point in the case is whether the oral contract was made to the effect that plaintiff was to have the farm for the promised services to be rendered to her mother, and if made was it so fully performed as to take it out of the purview of the statute of frauds, and also is it so free from inequity as to require a court of equity to decree specific performance.

In a case of a similar kind it was held that the specific performance of such a contract rests largely in judicial discretion, and that unless the existence of the contract is clearly and certainly established by the proof, and is without inequitable conditions it will not be enforced. (*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 643.) As to the matter of proof it has been held that:

"Before an oral agreement will operate as a transfer of land it must appear that it is certain and definite in subject matter and purpose and has been proved by clear and satisfactory proof, but it is not essential that it be established by direct evidence.

"If the facts and circumstances brought out in the evidence, including the acts of the parties, are such as to raise a convincing implication that the contract was actually made and satisfy the court of its terms and performance, and that there would be no inequity in its enforcement, it is sufficient." (*Bichel v. Oliver,* 77 Kan. 696, syl. ¶¶ 2, 3, 95 Pac. 396. See, also, *James v. Lane,* 103 Kan. 540, 175 Pac. 387.)

Quite a number of cases of this kind have arisen recently in this jurisdiction, and in respect to them it has been said:

"Of course this is the sort of case where the triers of the facts, and especially the trial judge, must be alert to see that estates are not plundered through false and fraudulent claims, and where there must be careful and conscientious sifting of the evidence. But such claims may be *bona fide,* and when they are such and are established by clear and convincing evidence, they are perfectly legitimate and must be respected and enforced." (*Bateman v. Franklin,* 114 Kan. 183, 185, 217 Pac. 318.)

The earlier decisions of the question in this court demonstrate that the owner of property may dispose of it as he pleases, and if it be clearly shown that he orally agreed to give his property or a part of it for exceptional services, which were fairly and fully performed, courts of equity will decree specific performance. (*Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731; *Pantel v. Bower,* 104 Kan. 18, 178 Pac. 241; *Nash v. Harrington,* 110 Kan. 636, 205 Pac. 354; *Hickox v. Johnston,* 113 Kan. 99, 213 Pac. 1060; *Hutchinson v.*

*Hutchinson,* 120 Kan. 154, 242 Pac. 480; *Rooney v. McDermott,* 121 Kan. 93, 246 Pac. 183.)

To take an oral contract for transfer of land out of the statute of frauds by alleged acts of performance, the acts relied on must clearly appear to have been done in pursuance of the contract and not because of some filial or other relation. (*Owens v. McNally,* 113 Cal. 444, 36 Cyc. 645.) While plaintiff produced testimony tending to show the existence of the contract alleged, there is evidence and many circumstances tending to refute the claim of plaintiff, and it therefore became the function of the trial court to weigh the evidence, including the contradictions and conflicts, and determine the veracity of the witnesses and the truth in the case. In view of the standard of proof required in such cases, it cannot be said that there were no grounds for a holding by the court that the evidence did not show clearly and convincingly that the alleged contract was actually made or that the claimed services were performed in pursuance of the contract. So far as the alleged will is concerned, it was within the possession of Mrs. Katherman, and as it was not found, but had been removed from the place and the envelope in which it had been kept, the presumption in the absence of evidence to the contrary is that she destroyed it. (28 R. C. L. 384.) If the will contained the devise as claimed it might be argued that the farm had not previously been given to the plaintiff under the contract, and if it was destroyed or revoked by the testatrix, as she had a right to do, it might be argued that the testatrix had concluded to let the property descend to her heirs under the law. Of course, if a valid agreement had been made and performed and the right to it became vested in the plaintiff, it could not be defeated by a different disposition of it in a later will. (*Nash v. Harrington,* supra.) Plaintiff, as we have seen, however, is relying on the contract and not on the will, and the trial court has in fact held that no such contract existed. In view of the discretion vested in the court already mentioned, and the conflicts in the evidence as well as circumstances which were adverse to the plaintiff's claim, we cannot say that the court abused its discretion or erred in its finding and judgment. The plaintiff's contention on this appeal really is that the evidence preponderates in her favor, but preponderance does not avail to overthrow a judgment for defendants, supported as it is by competent though conflicting evidence.

The judgment is affirmed.