No. 41,140

In re Estate of Anna E. Summers. (A. S. MORGAN, *Appellee*, v. KENNETH P. ROCKHILL, Administrator, *Appellant*.)

(334 P. 2d 373)

Opinion filed January 24, 1959.

*George Forbes*, of Eureka, argued the cause, and *Thomas C. Forbes* and *Harold G. Forbes*, both of Eureka, were with him on the briefs for the appellant.

*T. D. Hampson*, of Fredonia, and *Harry L. Depew*, of Neodesha, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This action arose in the nature of a claim filed in the probate court against the estate of Anna E. Summers who died intestate on September 2, 1955, and sought specific performance of an oral contract wherein decedent was to devise property to claimant as consideration for claimant's services and care of decedent and her husband during their lifetimes.

The probate court assigned real estate and personal property therein contained to claimant from which order an appeal was perfected to the district court by the administrator of decedent's estate. After presentation of evidence, the district court made findings of fact and conclusions of law and ordered that claimant was owner in fee simple of the real property and owner of the personal property therein and made a further order that the administrator immediately deliver possession of such property to claimant. Motions to set aside the findings of fact and conclusions of law and for a new trial were overruled. This appeal by the administrator from all those orders followed.

The only questions raised on appeal concern the trial in the district court and we will proceed directly thereto.

A jury was waived and the following pertinent facts were stipulated by the parties:

"3. That Anna E. Summers purchased Lots 7, 8, 9 and 10, Block 7, in the City of Fall River, Greenwood County, Kansas, on May 12, 1950.

"4. That in the estate of Anna E. Summers Lots 7, 8, 9, and 10, Block 7, City of Fall River, Greenwood County, Kansas, were appraised at $6,000.00.

"5. That in the estate of Anna E. Summers the household goods and effects were appraised at $500.00.

"6. That the records of the Social Welfare Department which contained the case history of A. S. Morgan reflect:

"(a) That on the 8th day of January, 1952, Mr. Morgan stated that he was working for Mrs. Anna E. Summers in Fall River for $5.00 a day when he worked.

"(b) Mr. Morgan stated on the 15th day of July, 1952, that he was cooking meals for Mr. Summers while his wife was gone.

"(c) That on July 13, 1953, Mr. Morgan stated he was looking after the neighbor's things now while they were on vacation.

"(d) That no claim was made by Mr. Morgan to the case worker to the property in question prior to the death of Anna E. Summers."

For convenience we shall refer to Anna E. Summers as Anna, to John Summers her husband, as John, to A. S. Morgan as Morgan, and to Kenneth P. Rockhill as the administrator.

T. E. Knight, a banker, was the first witness presented by Morgan. Knight testified that Morgan had been admitted to Anna's safety deposit box in his bank and allowed to remove it from the bank one time by the authority of a note signed by her and that Morgan invariably paid the water bill for Anna. Another witness said that on a number of occasions Morgan had purchased groceries for Anna and she had told the witness she was going to settle up with Morgan; that she had not settled up with him since he had

begun working over there. In 1950 John needed care and a registered nurse was called in and she testified that she saw Morgan washing dishes; about 1951 she was called in again and John was incompetent to care for himself. He "hollered," tossed around, wouldn't stay in bed, and banged on the furniture. At the time of John's funeral, in May of 1955 and in the presence of Morgan, Anna told the witness that she wanted Morgan to have the home because he was so good to her and John, and that money couldn't pay for it. The nurse had seen Morgan take John for walks and he was always working in the garden. Anna had sought the nurse's advice about giving the home to Morgan "without the county getting anything to do with it" but she had told Anna to see an attorney. The funeral director, who knew both John and Anna, stated that Anna told him she owed Morgan some money for caring for John and she wanted Morgan to have her home after they were through with it. He had asked her about having two iceboxes and also deep freezes and she had said,

"Well, someday this will all belong to Mr. Morgan if I don't dispose of it, or if I still have it."

Anna had also talked with the funeral director about writing a check but he didn't know whether she had done so. She said Morgan had cared for John during his illness and before that he had taken care of the garden and the place for her. Prior to her accident Anna had discussed the disposition of her property with the funeral director and had said that on her return from that trip she would make a will providing for Morgan to get the property so relatives would not get a part of it. There was some question by Anna as to the sufficiency of the property to compensate Morgan or whether she should also give him some money.

A real estate agent who had known John and Anna for years had seen Morgan mowing the lawn and working in the garden many times. He had known John to be more or less "off-balance" for ten years and that Anna had told him she was going to give Morgan the home. She had requested the agent to go with her to straighten it out. A neighbor testified he knew Morgan had built a fence on Anna's property and had helped construct a building thereon. Morgan had planted fruit trees, raised vegetables and helped Anna can them. He had washed clothes and hung them on the clothesline. He had also cared for John. This had occurred during about a two year period of time. Morgan's son

testified that Anna told him three or four times she intended for Morgan to get the place as his compensation for taking care of her and John.

Morgan testified to about the same things that his previous witnesses had. Because of John's mental and physical condition he had lived separately in one of two little houses on their land. To prevent John from burning himself Morgan had had to take the lever off the gas jet and turn the gas off and on with pliers. John would run off and he would have to bring him back. This was the reason he had built a six foot fence to keep John in. Morgan said he had told the case worker that he was looking after John and Anna and he would get the place.

Vina Vaught, the first witness on behalf of the estate, who had known John and Anna since 1928, testified that Anna had told her the property would be willed to her but she was not making any claim. Anna had told her that she, Anna, owed Morgan nothing. When John would make a mess and Morgan cleaned him up, Anna had "slipped" a $10.00 bill to him because he was on relief. A cafe operator had known Anna and John since 1937 and she often visited in the home. Anna told her that she paid Morgan for any work he did by giving him money in an envelope so he would not lose his old age assistance. Anna had told her that she was going to will the home to Vina Vaught. The husband of the cafe operator testified that Anna had said Morgan was good to her and John; that she had paid him money on the sly and had given him birthday presents and things like that because she could not pay him wages since he was on relief. Anna had told him that Morgan had been well paid. This conversation was in the presence of Anna, the witness, and his wife. Another witness testified that Anna gave Morgan five dollars to care for John for a night and part of two days.

The district court made findings of fact wherein it substantially found that from 1950 or 1951 to 1955 Morgan had performed services for Anna and John, which included housework, yard work, and running errands, and for a portion of 1954 and 1955 he had constantly attended John, who was mentally and physically infirm, for which services Morgan expected to be compensated and Anna expected to so compensate him, but no substantial compensation was received by him. John lived in one of two small houses on their property and had to be confined within a fence due to his

condition and his wandering off. Morgan frequently had to change John's clothes and bed because John was unable to care for his needs and functions. Anna was over seventy years of age and was heavy set so she could not do her housework at all times. The home was appraised at $6,000 and household furniture therein at $500. Anna had other real and personal property. The home and furniture claimed by Morgan were substantially commensurate to the value of the services he had performed for Anna and John. On numerous occasions Anna had stated to witnesses, and once had done so in Morgan's presence, that she had appreciated the services performed by Morgan for her and John; that she owed Morgan for his services and she had not settled with him; she could not pay him in cash because he received welfare assistance and she intended for Morgan to have the home after her death. These statements were made by her from 1952 until her death. Morgan had told his welfare worker of their "deal" and that he would get the "property" for the services he had performed for John and Anna. In view of this evidence the finding was made that Anna had promised claimant that he would have her home and its contents because of the services performed by him. Morgan was not related to John or Anna but worked for them on a substantial full-time basis. Anna did not wish her property to pass by the laws of descent and distribution although she died intestate. The services performed by Morgan were of a personal nature not compensable in money. Except for his son, Morgan was not related to any of the witnesses in the trial. Morgan was seventy-two years old and in good health at the time of Anna's death.

The conclusions of law by the trial court, in substance, determined that any variance between the time of the contract alleged and the time shown by the proof was not material and would not defeat Morgan's claim (41 Am. Jur., Pleading, § 377, p. 552); a contract existed between Morgan and Anna; the terms provided that Morgan would look after and care for Anna and John, perform household duties, care for the premises, and in general perform services requested by Anna for the consideration that Morgan would receive the home, household goods and furniture which remained at her death; the contract apparently was made in 1950; evidence that services were performed and not paid for, that Anna stated such services could not be paid for in money, that she expected Morgan to have her home and personalty therein, the frequency of Anna's statements, the fact that such statements were made in Morgan's

presence, that evidence regarding such statements was related by credible and apparently impartial witnesses, the reasonableness of Morgan's demand in view of the value of his services performed and the testimony that there was a "deal" or contract, together with all of the other evidence, constituted clear and satisfactory evidence that a contract was made as above stated; it would be inequitable to deprive claimant of compensation for his services by failing to allow his claim and that no apparent fraud or inequity would result to anyone by reason of sustaining the contract; Morgan had performed all of the terms of the contract binding upon him and he was entitled to specific performance of the contract; he was decreed to be the owner of the fee simple title to the home and the household goods therein.

The administrator moved to set aside the findings of fact and conclusions of law, and for new trial. The trial court in its journal entry set out its findings of fact and conclusions of law, and overruled the motions of the administrator. The administrator appealed from the judgment allowing Morgan's claim, adjudging him owner of the real and personal property, and from the order overruling the administrator's motion to set aside findings of fact and conclusions of law, and his motion for new trial.

Notwithstanding the administrator assigned six specifications of error, there are only two questions submitted and argued by him.

The first question asks whether there was any competent evidence from which the trial court could find that on May 18, 1949, (or at any other time) Anna contracted or agreed with Morgan that in consideration for certain services to be performed by him, she would devise to him certain real and personal property?

We have heretofore briefly summarized the salient parts of the evidence. The administrator attacks the rather voluminous remarks of the trial court at the time it overruled the motion for new trial as showing an influence of prejudice. We have carefully considered those remarks but we cannot agree with the administrator that they show any prejudice. On the contrary we think they represent a full retrospective discussion of the evidence and are a repetition of the proposition that the evidence supported the trial court's findings of fact and conclusions of law.

We agree with the administrator that an appellate court does not weigh evidence as does a trial court. Our concern is whether there is any competent evidence, however conflicting or disputed, to sustain the findings of fact of the trial court. This rule is suc-

cinctly stated in *Leverenz v. Leverenz,* 183 Kan. 79, 85, 86, 325 P. 2d 354, along with a few of our many decisions in support thereof.

The administrator correctly enumerates the elements a court must be satisfied exist in a case of this type before such a determination can be reached as was reached by the trial court here. They are:

1. That a contract was entered into between the deceased and the claimant.

2. The essential terms of the contract.

3. That claimant had performed his part of the contract in accordance with its terms.

4. That the enforcement of the contract would not be inequitable.

The testimony of the registered nurse and the welfare records, as stipulated by the parties, and the continuous services rendered by Morgan for Anna and John's benefit sufficiently set out a contract to satisfy the trial court notwithstanding the administrator's evidence. In view of that evidence, and following the rule in the Leverenz case, we are bound to uphold and not disturb the trial court's finding that a contract was entered into between Anna and Morgan. Both parties discussed *Bichel v. Oliver,* 77 Kan. 696, 700, 95 Pac. 396, which contains language applicable in cases of this kind, but we do not deem it necessary to set out that discussion verbatim herein.

The essential terms of the contract were that for the personal and filial services furnished to John and Anna by Morgan, Anna's home and the remaining household goods contained therein were to go to Morgan when she was through with them. Here again, the trial court believed that evidence, which was abundantly shown by the testimony, and found those to be the essential terms of the contract. As above stated, we are constrained to uphold such a finding.

It is unquestionable that the evidence conclusively shows that Morgan carried out and performed the duties required of him by the terms of the contract. By reason thereof, it can only be concluded that he should be declared to be the owner of the property in question. Rather than being inequitable so to hold, it would vitiate equity to hold contrarily.

We have not overlooked authorities urged by the administrator but they do not apply here because the propositions involved in them are different from those here present.

It is impossible to find support for the administrator's inference

that this case falls into the category of those where a claimant is trying by colored or fabricated evidence to assert a contract that would be inequitable to enforce. Mention is made that all the property owned by Anna and John in Fall River was sought in Morgan's petition but the property other than the home was deleted at the outset of the trial and the testimony of impartial, unrelated, and substantial citizens established the evidence which was apparently believed by the trial court when it made findings of fact. Testimony of witnesses for both Morgan and the administrator shows that Anna was still receiving and accepting the services performed by Morgan up to the time of her death. Morgan's evidence further shows that she had asked assistance and advice regarding the making of a will providing for Morgan to have the home and household goods. From the evidence it must be admitted that the property was not an excessive payment for the services furnished by Morgan.

The second question urged by the administrator was whether the findings of fact and conclusions of law made by the trial court were contrary to the evidence, were contrary to and inconsistent with each other, and were erroneous conclusions of fact and law. We must answer all of the elements of this question in the negative. The trial court saw the witnesses and heard their testimony and weighed the evidence. We cannot now reweigh that evidence and make contrary findings of fact and conclusions of law based on the conflicting or disputed evidence. It is not within our province to dictate to a trial court what evidence it should, or should not, believe.

The administrator relies on the case of *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665, but that case was distinguished in *In re Estate of Spark,* 168 Kan. 270, 276, 212 P. 2d 369, where a good discussion of some of the problems presented in this type of case may be found. We should also like to call attention to two later cases on the same subject. They are: *In re Estate of Boller,* 173 Kan. 30, 38, 39, 40, 244 P. 2d 678; and *In re Estate of Good,* 175 Kan. 576, 590, 266 P. 2d 719.

Judgment affirmed.