**BEELER et al. v. MOTTER, Internal Revenue Collector, etc.**

District Court, D. Kansas, Second Division.
September 22, 1928.

No. 1028.

Henry H. Asher and Walter G. Thiele, both of Lawrence, Kan., for plaintiffs.

Al F. Williams, U. S. Atty., and Alton H. Skinner, Asst. U. S. Atty., both of Topeka, Kan. (C. M. Charest, General Counsel, Bureau of Internal Revenue, and Wm. T. Sabine, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

McDERMOTT, District Judge. This is an action at law to recover $7,402.12 paid by the plaintiffs as a part of the tax on the estate of their deceased father. The tax was levied by the Commissioner under a finding made by him that four farms, conveyed by the decedent to his sons, were gifts made in contemplation of death. The plaintiffs claim they were not so made; hence this lawsuit.

Fred Beeler, Sr., the decedent, by the exercise of industry and thrift and an exceptional amount of business shrewdness and acumen, hewed out from the resisting prairies of Western Kansas, a fortune of well over a million dollars, nearly all of it in liquid, negotiable, and sound securities, upon which the tax has been paid to both the government and the state. He retained his strong and dominant mental powers until he was 80. About two years before his death the doctors at the Mayo Bros. Clinic at Rochester, Minn., pronounced him sound. Later he became troubled with catarrhal duodenitis, and on the morning of January 10, 1925, was found dead in bed. Within a week of his death he traveled alone and transacted business. Five days before his death he made his will, and also deeds to his four sons to the four farms in question. Each deed recited as follows:

"Witnesseth, that whereas, party of the first part, in consideration of love and affection did on or about the first day of January, 1919, give, grant, and convey unto party of the second part the property hereinafter described; at which time, party of the second part entered upon the same and took possession thereof and has since that time occupied, used and enjoyed the same as his own, and has appropriated to his own use and benefit all income derived therefrom, and has made and placed valuable improvements upon said property, and is now occupying and using the same and whereas, party of the first part overlooked and neglected to make, execute and deliver a deed conveying the legal title to said property unto said party of the second part and now wishes to complete said gift, grant and conveyance to party of the

second part, by transferring to him the legal title to said property, the equitable title to which he now has had since the above mentioned date."

There is no doubt but that such deeds were made in contemplation of death, and, if the gifts rest upon those deeds, judgment must go for the defendants. The plaintiffs claim that parol gifts of the farms were completed on January 1, 1919. If that is true, judgment must go for the plaintiffs, for the evidence is entirely clear that at that time the decedent was not in contemplation of death, as that term has been construed by our Court of Appeals. In Flannery v. Willcuts, 25 F.(2d) 951, 953, that court said:

"We are also in accord with counsel's statement in his brief that the cases 'hold that the thought of death must be the actuating motive without which the gift would not have been made'—adding thereto the qualification that the 'thought of death' as an anticipation of the inevitable which we all realize, is not within the statute; but to be within the statute the thought must arise because of some known infirmity which, it is believed, will likely cause death."

A question is raised as to where the burden of proving the fact rests. Being back of the two-year period of presumption prescribed by the statute (section 402, Revenue Act of 1918, 40 Stat. 1097) the plaintiffs insist that the burden rests upon the government. The government insists that the burden is upon the plaintiffs to overturn the finding of the Commissioner that the gifts were in contemplation of death. It is a question of some nicety, but need not now be determined, for, if the burden be upon the plaintiffs, they have carried it, as there is not the slightest doubt that in 1919 Mr. Beeler was vigorous, hearty, and bothered with no thought of death. He made the gifts upon the occasion of the marriage of his youngest son. He desired to himself retire from the active management of his farms, and to start the boys on their own careers; and the occasion was an appropriate one.

The real controversy is of double aspect: Did the father give these farms to his sons on New Year's Day, 1919, or is the story a fabricated one? If he did, was the parol gift effective?

■ Upon the first question, the evidence leaves no room for doubt. Agreeing fully that such evidence must be clear, satisfactory, and convincing, particularly between father and sons, there is still no reason or excuse for ignoring all the evidence in the case, much of which comes from disinterested persons. If the mass of evidence in this case is to be simply disregarded, courts of justice might well close their doors. Without detailing the evidence, it is enough to say that Mr. Beeler told many people he had given the farms to the boys; they testified they paid no rent to him, and an examination of his accounts and theirs disclosed no such payments. One of the boys wanted to lease a portion of the lands given him, and his father drew the lease, inserting his son's name as owner, and his son signed it. The sons occupied the farms, built buildings on them, used the income, and considered them their own. The government argues that the sons are incompetent witnesses under the Kansas statute prohibiting a party to a lawsuit from testifying to transactions or conversations with a deceased person.

■ The disqualification is limited to cases where (a) one of the parties claims to have acquired title from the deceased person, which is construed to mean, as it must, title to property in litigation; or, (b) where the adverse party is the heir or personal representative of the deceased. Section 60—2804, Rev. St. Kan. 1923. This case falls in neither category. K. C. Life Ins. Co. v. Wilkinson, 125 Kan. 305, 264 P. 37; Savage v. Modern Woodmen, 84 Kan. 63, 113 P. 802, 33 L. R. A. (N. S.) 773. But, if the evidence is incompetent, there is abundant other evidence to establish the fact.

The evidence is also without dispute that the sons made certain improvements on the lands after January 1, 1919, and prior to their father's death. These were such as hog houses, sheds, caves, cisterns, and fences, and were permanent in character. The average value was probably about $2,000 a farm, or about one-tenth of the value of the farm.

■ This brings us to the legal question: Is a parol, completed gift, accompanied by exclusive possession and followed by lasting and valuable improvements, valid?

The government insists that, this being an action at law, no equitable doctrine of "part performance" can be invoked to get around the statute of frauds, which in Kansas requires a writing to convey real estate. The plaintiffs insist that a stranger to the contract cannot invoke the statute of frauds. In my opinion both positions are untenable. This action, of course, is at law; but, if a valid gift was made, not in contemplation of death, the tax is recoverable. The question is, Was a valid gift made? Now a gift, to be valid, within this taxing statute, must intentionally and irrevocably divest the donor of

dominion and control in præsenti. Allen-West Comm. Co. v. Grumbles (8th C. C. A.) 129 F. 287. If, then, a parol gift is unenforceable in Kansas, the father had not irrevocably parted with dominion and control; at any time between January 1, 1919, and January 5, 1925, he could have recovered possession by action at law, and the gift was incomplete. If, on the contrary, under Kansas law, and under the facts, he could not have recovered possession from his sons after the parol gift, or if the sons could have required a conveyance to perfect their title, then the gift was irrevocable and complete. The government does have the right to test the sufficiency of the gift under the Kansas law; and the plaintiffs have the right to establish its sufficiency in this action at law.

▐▌ Whether or not the transaction of January, 1919, resulted in an effective, valid, and irrevocable gift must be determined by the laws of Kansas. The federal courts have consistently followed the state law in determining title to real estate (Williamson v. Suydam, 6 Wall. 723, 18 L. Ed. 967; Nichol v. Levy, 5 Wall. 433, 18 L. Ed. 596), and have also followed the state courts in their decisions as to the statute of frauds (Moses v. National Bank, 149 U. S. 298, 13 S. Ct. 900, 37 L. Ed. 743), as in fact they do as to state statutes generally (Webster v. Cooper, 14 How. 488, 14 L. Ed. 510). In the case in hand, the rules of the state and federal courts appear to be in harmony.

The Kansas courts have uniformly held that a parol gift of land, accompanied by possession and followed by lasting and valuable improvements, is valid, and may be enforced against the donor or any one else. In short, it is irrevocable. Schwindt v. Schwindt, 61 Kan. 377, 59 P. 647; Galbraith v. Galbraith, 5 Kan. 405; Newkirk v. Marshall, 35 Kan. 77, 10 P. 571; Flanigan v. Waters, 57 Kan. 18, 45 P. 56; Baldwin v. Baldwin, 73 Kan. 44, 84 P. 568, 4 L. R. A. (N. S.) 957; Dyer v. School Dist., 76 Kan. 889, 92 P. 1122. The federal rule is essentially the same. Mackall v. Mackall, 135 U. S. 167, 10 S. Ct. 705, 34 L. Ed. 84; Bibb v. Allen, 149 U. S. 481, 13 S. Ct. 950, 37 L. Ed. 819; Neale v. Neale, 9 Wall. 1, 19 L. Ed. 590; King v. Thompson, 9 Pet. 204, 9 L. Ed. 102; Whitney v. Hay, 181 U. S. 90, 21 S. Ct. 537, 45 L. Ed. 758.

▐ Certain technical arguments have been advanced by the government which have received consideration. It is for the first time urged that the plaintiffs are not the proper parties. The objection is neither seasonable nor sound. Munroe v. United States (D. C.) 10 F.(2d) 230. Isolated phrases and scraps of sentences are urged as to the facts. But it has been repeatedly held that the substance governs in these cases. Goodyear v. United States, 273 U. S. 100, 47 S. Ct. 263, 71 L. Ed. 558; Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; U. S. v. Klausner, 25 F.(2d) 608 (C. C. A. N. Y.). When all the evidence is considered, the fact stands out that on January 1, 1919, the decedent did make a valid gift of these farms to his boys, and that at that time he was not in contemplation of death; the time had come for him to set them up in business, and he did so.

The case would be free from difficulty if it were not for one proposition that at first blush appears to be in the case. An examination of the income tax returns, made by the decedent from 1918 on, raises a strong suspicion that Mr. Beeler took credit for depreciation of the improvements on the farms he had given away. There is also a statement by a witness that he continued paying taxes on the lands given in order to get a similar credit on his income tax.

▐█ The question was not briefed, and, after submission, the court submitted to counsel the following question:

"Assuming that a valid gift of the lands in question, on January 1, 1919, has been shown by competent and satisfactory evidence; further assume that deeds were not then made because the decedent desired to appear as the legal owner so that he might take credit on his income taxes for depreciation and local taxes; query,

"After having represented himself to the government as the owner of this land during these years in order to lessen his income tax, are his heirs estopped, as against the government, from showing a contrary state of facts in order to lessen their taxes?"

Briefs have now been received upon that question. Counsel for plaintiffs argue that an estate tax cannot be attacked because the decedent defrauded the government in income taxes during his lifetime. That, however, is not the question. The question is one of estoppel. Ordinarily one who has misrepresented a fact to another person ignorant of the truth, for his gain and the other's detriment, cannot thereafter, when the shoe is on the other foot, assert the untruthfulness of his former representations. Counsel say that the government cannot urge an estoppel because, if its representative had visited every farm when the income tax return was

filed, he would have discovered a son in possession, and thus have constructive notice of the falsity of the return. But no such onerous task is placed upon the government. The government is entitled to rely upon sworn income tax returns. It is also urged that, whatever misrepresentations may have been made by the father, the sons are not bound. The issue involves a tax on the estate of the father, and not the estate of the sons. Estoppel does bind one in representative capacity or one in privity. Armstrong v. American Exchange Bank, 133 U. S. 433, 10 S. Ct. 450, 33 L. Ed. 747; Ford v. Ford, 24 S. D. 644, 124 N. W. 1108; Hubbard v. Slavens, 218 Mo. 598, 117 S. W. 1104.

The doctrine of estoppel is succinctly stated in Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, 619:

"The estoppel here relied upon is known as an equitable estoppel, or estoppel in pais. The law upon the subject is well settled. The vital principle is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice."

The doctrine has been repeatedly invoked in tax cases. McDonald Coal Co. v. Lewellyn (C. C. A.) 16 F.(2d) 274; St. Louis Railroad Co. v. Middlekamp, 256 U. S. 226, 41 S. Ct. 489, 65 L. Ed. 905; Central Pac. R. Co. v. California, 162 U. S. 91, 16 S. Ct. 766, 40 L. Ed. 903. It would indeed be strange if a citizen could represent one state of facts to the government to cut down his income taxes, and his heirs represent exactly the contrary to cut down his estate taxes.

A more careful examination of the record develops that the question is not fairly before the court for determination, for two reasons: In the first place, the evidence does not show that the father either paid the taxes on these farms after 1919, or that he took credit in his income tax returns for such taxes, 'or for depreciation on improvements upon the farms. At the trial, the statement of the witness Postlethwaite that the father had told him, in 1924, that he was paying the taxes in order to get credit on his own income tax, seemed to offer an explanation of why this decedent, ordinarily so meticulous in business matters, had failed to make deeds. Since receiving the supplemental briefs, I

have re-read the record with this one point in mind.

Except for the statement of the witness Postlethwaite, I can find nothing in the record on the point. Three of the four sons were on the stand; the officers of the father's bank, and his personal secretary, testified; apparently the father's bank account, his canceled checks, as well as those of the sons, were available for inspection. The public records might have disclosed something about it. Yet, with all these opportunities for ascertaining the primary fact, nothing was developed. Postlethwaite undoubtedly told this casual conversation as he recalled it; yet it is inherently improbable that this thrifty old gentleman paid out a hundred dollars in state taxes for the sole purpose of getting a $20 credit on his federal taxes. In any event, such a casual statement is an unsatisfactory basis for a finding of fact when so much other direct evidence was available.

The evidence as to taking credit for depreciation on improvements, and for state taxes, consists of income tax returns from 1918 until his death. Roughly they show about the same amount of credits taken before the alleged gifts as afterward. But there is nothing to identify the credits. As far as the record shows, the father might have acquired other property in 1919, the taxes and depreciation on which would offset the taxes and depreciation on the property given away. Moreover these returns were received in evidence for a limited purpose, and that was as far as they might bear upon the question of whether the gift was actually made in January, 1919.

In the second place, the reason why the record is so barren on these questions is probably because no question of estoppel was raised by the pleadings. Estoppel is an affirmative defense which must be pleaded. 10 R. C. L. 842, 844; Painter v. Fletcher, 81 Kan. 195, 105 P. 500; Feick v. Stephens, 250 F. 185 (6th C. C. A.) certiorari denied, 248 U. S. 562, 39 S. Ct. 8, 63 L. Ed. 422. Even under the most liberal view as to the office of pleadings, it seems apparent in this case that the plaintiffs, not being advised of the claim of estoppel, have made no effort to meet it.

The request of the defendant for supplemental findings of fact upon the question of estoppel will be denied, and judgment will be entered for the plaintiffs for $7,402.12, with six per cent. interest from March 22, 1927, until paid.