No. 36,011

GRANT BLACK and CHESTER BLACK, *Appellants,* v. C. L. HUXMAN, *Appellee.*

(147 P. 2d 710)

Opinion filed April 8, 1944.

*Rellis C. Eastman,* of Liberal, argued the cause for the appellants.

*G. L. Light* and *Auburn G. Light,* both of Liberal, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action for money. Judgment was for the defendant sustaining the demurrer to the plaintiffs' evidence. The plaintiffs appeal.

The petition alleged that on November 27, 1940, the plaintiffs entered into a written contract with defendant whereby they agreed to sell to the defendant a half section of land; that this contract involved the allotment and parity payments upon this land; that about December 31, 1941, the defendant collected $348.69 in conservation payments upon this land for the year 1941 and for crops harvested during the year 1941 and this amount should have been immediately paid by him to the plaintiffs, but defendant had appropriated this sum to his own use and refused to pay it to plaintiffs.

Two contracts were attached to this petition. One was under date of the 27th of November, 1940. It provided for the sale of a section of land and contained the following provision:

"All allotment and parity payments that have been earned and signed up for by Grant Black and Chester Black is to go to Grant Black."

Apparently this contract was not entirely satisfactory because on December 2, 1940, the same parties entered into a supplemental contract which referred to the contract of November 27, 1940, and contained the following two provisions:

"1st. That the allotment and parity payments shall involve those earned

and signed up for and including the allotment and parity payments for the wheat now growing upon this land.

"2nd. That it is understood and agreed that said allotment and parity payments shall be divided between Grant Black and Chester Black or their heirs according to the divisions now in existence with said allotment board of Haskell County, Kansas."

For an answer to this petition, the defendant alleged that he received what he called a conservation payment in the amount of $348.69 about December 31, 1941, and that this payment was earned by the defendant subsequent to the harvest of the 1941 crop by defendant operating the land in accordance with the approved methods and that no part of this payment was earned by plaintiffs, or either of them, in the planting or production of the 1941 crop.

When the case came on for trial the contracts were introduced. No question was raised about them. The parties agreed that all of the 1941 parity payments covering this section were paid to the plaintiffs on July 14, 1941, and that the conservation payments were paid to the defendant and retained by him. There was no question raised regarding the parity payment having been made to the proper parties or its retention by plaintiffs. It was admitted that the conservation payment was made to defendant on December 30, 1941, in the amount for which the action was brought. It is also admitted that until March 17, 1941, the allotment board of Haskell county had nothing before it regarding to whom to make payments other than to pay them to plaintiffs.

A young lady clerk from the agricultural administration office of the county testified for the plaintiff that the office first heard about defendant being interested in the payments on August 20, 1941. Counsel thereupon admitted that until March 17, 1941, the allotment board had nothing before it to indicate that the payment should not be made to Grant and Chester Black, the plaintiffs. The young lady testified that the 1941 parity and conservation payments were made during the year 1941. There was testimony then that the farmers in Haskell county used the term "allotment," "payment" and "parity" almost interchangeably. The young lady from the department then testified as follows:

"Q. You have about three different terms that are used in your allotment office with reference to what you call different payments; one is parity and one is conservation and I don't know whether you still use the old allotment word or not, but could you tell us what parity means? A. Well, we have the parity payments which are paid in the spring which is a part of the wheat

payment; it is made on wheat alone, on the wheat base, and is part of the wheat payments, and we have the conservation payment, which is made in the fall, which is the finish of the parity payment and paid on all other practices performed on that land."

Upon this record the court sustained the demurrer to the evidence of plaintiff.

Our problem is first: What did the parties intend should be paid to the plaintiffs when they made their contract? It is agreed that as far as the payment by the government agency is concerned it should be made to whoever owned the record title to the land. On December 31, 1941, the record title was in the defendants. However, if the parties agreed that certain payments when they were received by the holder of the record title should be paid by him to the plaintiffs and instead of their being so paid by him the defendant retained them, then the plaintiffs were entitled to recover.

It will be noted that the language used to clarify the first agreement refers to "allotment and parity payments" for the wheat then growing upon the land. The wheat growing upon the land in December, 1940, would be the wheat that was to be harvested in 1941. The young lady testified, as we have pointed out, that the payment made in the fall was the finish of the parity payment. She seemed to know about as much about this as anybody in the county. At any rate it is some evidence that the payment made in the fall of 1941, which would be the payment that went to the defendant and which plaintiffs claim should have been paid by the defendant to them, was at least a parity payment in part and certainly covered by the language of the supplemental agreement.

We have said many times that on a demurrer to the evidence, the evidence of the plaintiffs should be regarded as true, and all reasonable inferences, which went to sustain the position of the plaintiffs, should be drawn. See *Trezise v. State Highway Comm.*, 150 Kan. 845, 96 P. 2d 637. When we do that in this action we reach the conclusion that the demurrer to this evidence should not have been sustained.

The judgment of the trial court is reversed and the cause is remanded with directions to proceed with the trial of the case.

THIELE, J., dissents.