No. 36,181

In the Matter of the Estate of H. G. Bond, Deceased (SUSIE BOND, *Appellant*, v. ROSA ELVA TRENT, *Appellee*).

(150 P. 2d 343)

Opinion filed July 8, 1944.

*A. Harry Crane,* of Topeka, argued the cause, and *Ward D. Martin,* of Topeka, was on the briefs for the appellant.

*Randal C. Harvey,* of Topeka, argued the cause, and *Marlin S. Casey,* of Topeka, and *R. E. Melvin* and *George K. Melvin,* both of Lawrence, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was a proceeding to establish, and specifically perform, an oral contract under which the claimant Susie Bond asserts a right to all of the property owned by the decedent at the time of his death. The trial court sustained a demurrer to the claimant's evidence and rendered judgment disallowing such claim. The claimant appeals.

Preliminary to a statement of the facts pertinent to the main issue a chronological narrative of the events responsible for their existence will be helpful.

On October 31, 1908, the claimant and the decedent H. G. Bond were united in wedlock and thereafter lived on a farm and later in Overbrook. To that union was born a daughter Edna who in due time was married to one Verne Johnson and later divorced from him. Subsequently she remarried and her name is now Edna Wasmuth. Marital differences arose between the father and mother and in 1928 Mrs. Bond procured a divorce in the district court of Osage county. By virtue of the terms of a stipulation and agreement judgment was rendered in the divorce action dividing the personal property then owned by the parties and vesting title to a residence property in Overbrook in Mrs. Bond. The remaining property owned by the parties at the time was an eighty-acre tract of land located near Pauline. This land was disposed of by that judgment and decree as follows:

"That as to the following described real estate in Shawnee County, Kansas, to-wit: The south half of southwest quarter of Section 33, Township 12, Range 16, being the land mentioned in said stipulation as held in the name of the defendant and located near Pauline, Shawnee County, Kansas, the said plaintiff and defendant shall each be entitled to and have free from the claims of the other, a life estate in and to an undivided one-half of said real estate, with remainder to Edna Johnson, daughter of plaintiff and defendant; and that the said Edna Johnson shall have the right to the exclusive use, occupancy and possession of said real estate during said life estates, as long as she may desire to use and occupy said land, and said defendant may assist her in such use and possession by overseeing and advising in the operation of said land."

Subsequent to the divorce action Mrs. Bond resided at Overbrook and later in Topeka where, except for a short period presently referred to, she lived on all dates involved herein. For a time Edna Johnson and her husband lived on the land referred to but for reasons herein inconsequential moved away and Mr. Bond, who had been living with them, continued to occupy it as his home until the date of his death. On March 16, 1931, the claimant procured a judgment against Mr. Bond in Shawnee county for $425.45 based on his improper action in selling her share of crops grown on the farm and some of the buildings located thereon. From that date, and perhaps before, up to August, 1936, on intermittent intervals she made trips to the farm. On some of those occasions and particularly throughout the year 1934, Verne Johnson, who was either separated or divorced from Edna during all that time and yet remained on friendly terms with both Mr. and Mrs. Bond, would take the latter out to the place and while there

frequently had conversations with the former and overheard conversations between the two of them. It was on one of such occasions it is claimed the contract relied upon by claimant was consummated. In April, 1936, Mrs. Bond who had been working as a laundress at the State Hospital quit her job, bought some pigs and chickens and moved out to the farm where both she and Mr. Bond resided until he died on February 5, 1943. During that time she cooked the meals, did the housework, helped with the chores, hauled feed, fed Mr. Bond's livestock, and performed many tasks, manual in character and having to do with personal property owned by the decedent. She also cared for and ministered to the decedent during the last two years of his life while he was ill and in an almost helpless condition due to a paralytic stroke.

Turning now to matters germane to the principal question involved the record discloses the following facts and proceedings: On October 21, 1943, after institution of proceedings for the administration of the estate of H. G. Bond, deceased, the claimant filed a petition for allowance of her demand against his estate wherein she claimed his entire estate and alleged she was entitled thereto by reason of the fact that in the spring of 1934 she entered into an oral contract with decedent, thereafter fully performed by her, whereby in consideration of the cancellation of her judgment heretofore referred to and care of decedent for the balance of his life, he would leave her all of his property at his death. Subsequently Rosa Elva Trent, a sister of decedent and the appellee herein, filed an answer, the allegations of which so far as they are pertinent to the issues here, denied generally the existence of any valid contract between claimant and the decedent or that she had any right, title or interest in and to his property on the date of his death. On the issues thus joined a hearing was had in the probate court on the demand and it was allowed. In due time, Mrs. Trent appealed to the district court, where a demurrer to the evidence produced by the claimant in support of her demand was sustained, and a judgment was rendered disallowing her claim and remanding the cause back to the probate court with instructions to disallow it and render judgment in favor of Mrs. Trent for the costs incurred by her in the appeal to district court. It is from that judgment the appeal is taken.

On the trial in district court the only competent testimony produced by the appellant with respect to the terms of the oral agree-

ment relied upon by her was that of Verne Johnson. The claimant herself made an attempt to testify regarding that transaction, but her testimony was properly rejected on the ground that G. S. 1935, 60-2804, made her incompetent to testify in her own behalf with respect to transactions or communications had personally by her with her deceased ex-husband. Summarizing, Mr. Johnson's evidence in substance was that one Sunday in the spring of 1934, identified by Mrs. Bond in her testimony as one Sunday in April of that year, he took Mrs. Bond to the farm and there overheard a conversation between her and Mr. Bond. Specifically, with respect to the terms of the oral contract relied on by appellant the record discloses this witness was asked questions to which he made answers as follows:

*Direct Examination:*

"Q. Who said that? A. Mr. Bond. He said he would have to have help, and wanted her to come out and do the work and chores and cook for him and such as that. There was too much for him to do. The conversation that I heard was if she would release the claim that she had against him and come out and run the farm, or help run the farm, cook for him and take care of him he would leave everything to her at his death and then at her death it would—the daughter was to get it.

"Q. What did she say to that? A. She said at that time she couldn't right now because she had bills to pay, but she would later, and he told her whatever she had to do to pay her bills that would be OK, she could work and come out later, and she said she would do that. So she went out later."

*Cross-examination:*

"Q. You say there was something said about releasing a judgment on that day? A. Yes. That was Mr. Bond asked her to release the judgment and for her to come out and help take care of the farm and everything, cook his meals and take care of him, and—

"Q. I am just asking you—

"Mr. Crane: Let him finish his answer. Don't shut him off.

"A. He said if she would take care of him and help run the farm and cook his meals, at his death he would leave everything to her if she would release this judgment, and then at the time of her death she could leave it to her daughter.

. . . . . . . . . . . . . . .

"Q. What, if anything, was said between them on that occasion about when she was to come out? A. There was no particular time set on that. It was to be some time later, but there was no particular time set on it.

"Q. Did he say she could come out any time? A. Not just any time, but she said she had some bills of her own she would have to pay and would have to work at this job for some time and she said she would come out later, as soon as she got that taken care of. He said that would be O. K."

It would serve no useful purpose to relate in detail the evidence produced as to the conduct of appellant subsequent to the occurrence of the conversation referred to by Johnson. Briefly, it will suffice to say the appellant's testimony was that she executed a release of the judgment for which she received no money and that she went out to the farm to live on April 19, 1936, where she remained until Mr. Bond's death. She further testified, and her evidence in that respect was corroborated by other witnesses, that after going to the farm to live she performed work and services of the kind and character hereinbefore described.

The appellee's demurrer was predicated on (1) variance between the contract as pleaded and proved; (2) the agreement was not definite and certain; (3) no clear and satisfactory proof any contract was made; and (4) no showing services of Mrs. Bond were performed pursuant to the terms of any contract. Notwithstanding, the trial court limited the scope of its ruling when in a memorandum announcing its decision it made the following statement:

"Other evidence disclosed that as far as the farm was concerned the decedent and claimant each owned an undivided half interest in a life estate in the farm. The remainder of the estate was owned by the daughter. A fair construction to be put upon the testimony of the witness Johnson leaves a doubt in my mind as to the identity of the property which was to be left to the claimant upon the death of H. G. Bond. It was the burden of the claimant to identify the property to be received by claimant by clear and convincing proof. To me the evidence of the witness Johnson is subject to two constructions—one that they were talking about the whole of the decedent's estate, the other that they were talking about the possession of the farm and all things incident to that possession. The rule that the most favorable construction be placed upon claimant's evidence as against a demurrer should not apply where the burden is on the claimant to prove the existence of the contract, all of its terms and the property involved, by clear and convincing proof. The evidence does not make me sure as to what property they were talking about that the claimant was to get. These were my reasons for sustaining the demurrer to claimant's evidence, and they are my reasons now for overruling the motion for new trial and for overruling the motion to set aside the order sustaining the demurrer."

It is apparent from the language just quoted the trial court in reaching its conclusion was required to and did weigh the evidence adduced by appellant. Such action on consideration of a demurrer to the evidence is in our opinion clearly erroneous. This court in a long line of well-considered decisions has established the rule that in ruling on a demurrer to the evidence courts do not weigh the evi-

dence or compare contradictory testimony, but must accept all evidence as true and consider only such portions thereof as are favorable to the party adducing it. (*Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Rush v. Brown,* 153 Kan. 59, 109 P. 2d 84; *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, 110 P. 2d 810; *State v. Garlinghouse,* 157 Kan. 91, 93, 138 P. 2d 421; *Schroeder v. Nelson,* 157 Kan. 320, 327, 139 P. 2d 868; *Gilmore v. Kansas City,* 157 Kan. 552, 554, 142 P. 2d 699, and *Black v. Huxman,* 158 Kan. 317, 147 P. 2d 710.) True, as is suggested by counsel, this court has held, and properly so, that in actions for specific performance of an alleged oral contract of the character here involved it must appear such contract is definite in its terms and purposes, established by clear evidence that causes a convincing implication that it was actually made, and is such as to satisfy the court of its terms and performance and that there is no inequity in its enforcement. (*Bowen v. Galloway,* 125 Kan. 568, 264 Pac. 1038, and *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665.) However, an examination of the cases just cited, and others to the same effect, discloses that the judgments rendered in the courts below were based upon the insufficiency of the contract relied upon after a full and complete consideration of all the evidence and not upon a demurrer to the evidence under circumstances where there was some evidence to sustain the plaintiff's case. With specific reference to pages 260 and 261 of the Woltz case a number of cases are cited where the purported contract relied upon was not established under the doctrine announced therein and in other decisions referred to in that opinion. We have examined those cases with interest and note that in those where a demurrer to the evidence was the determining factor our approval of the trial court's action in sustaining such demurrer was in each instance based upon the premise that the plaintiff either failed to produce any evidence of an express contract or failed to produce evidence from which a contract might be legitimately inferred or implied. (See *Fair v. Nelson,* 96 Kan. 13, 15, 149 Pac. 432; *Pantel v. Bower,* 104 Kan. 18, 22, 178 Pac. 241, and *Dreher v. Brumgardt,* 113 Kan. 321, 323, 214 Pac. 419.) In support of her position the trial court's action in sustaining the demurrer at a time when there was evidence which if given the effect to which it was entitled under the doctrine recognized by this court on consideration of a demurrer to the evidence as proper, appellee directs our attention to an isolated statement to be found in the opinion of *Ross v.*

*Ross,* 139 Kan. 316, 321, 31 P. 2d. 718, wherein it is stated a trial court is not bound to wait until the defense had put on its evidence, but could conclude the case at the end of the evidence of plaintiff irrespective of whether recognition of the doctrine just referred to would require a ruling to the contrary. We doubt if in that case the court had in mind a situation such as exists in the instant one but, be that as it may, we hold now that insofar as any language there found may be interpreted to authorize the weighing of evidence by a trial court on a demurrer to the evidence the same is disapproved. The opinion might well end at this point were it not for one other proposition advanced by appellee. 'She insists that even if the reason given by the trial court in sustaining the demurrer be found to be insufficient the demurrer was properly sustainable on other grounds and that, nevertheless, under the rule announced in *Quinton v. Kendall,* 122 Kan. 814, 253 Pac. 600, the judgment should therefore be affirmed regardless of the propriety of the reason on which the ruling was based. The principle of law sought to be invoked by appellee is a good one and has our approval. The trouble with her argument here is that there is no room for its application. Reference to grounds 1, 2 and 3 of the demurrer discloses that under the evidence adduced by appellant the trial court was required to weigh the testimony, while from an examination of the petition for allowance of the demand and the evidence we have no difficulty in determining appellee's position there was a fatal variance between the contract pleaded and the one testified to by the witness Johnson cannot be upheld.

The judgment sustaining the demurrer to the evidence is reversed and the cause is remanded for further proceedings consistent herewith.

Harvey, J., not participating.