No. 38,530

In the Matter of the Estate of J. N. Dieter, Deceased. (ANNA MARGARET M. CAIN, *Appellant,* v. THE ESTATE OF J. N. DIETER, deceased, and NEVADA P. DIETER, Individually, and as Executrix of the Will of said J. N. Dieter, deceased, *Appellees.*)

AND

In the Matter of the Estate of J. N. Dieter, Deceased. (OLIVE DIETER and WEBB MALCOLM, Administrator of the Estate of CHARLES A. DIETER, deceased, *Appellants,* v. THE ESTATE OF J. N. DIETER, deceased, and NEVADA P. DIETER, Individually, and as Executrix of the Will of said J. N. Dieter, deceased, *Appellees.*)

(CONSOLIDATED)
(239 P. 2d 954)

Opinion filed January 26, 1952.

*C. Vincent Jones,* of Clay Center, argued the cause, and *Wayne W. Ryan,* of Clay Center, was with him on the briefs for the appellants.

*W. M. Beall,* of Clay Center, argued the cause, and *John P. Dieter,* of Abilene, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: These actions were commenced in the probate court of Dickinson county to enforce an alleged trust and for an account-

ing. Thereafter, pursuant to the provisions of G. S. 1949, 59-2402 (a), they were duly transferred to the district court of that county for trial. Subsequently by stipulation of the parties and order of the court the two cases were consolidated. The parties also stipulated the case as consolidated was to be tried in two parts. Under this stipulation it was agreed the court should first try the question whether there was, and still is, a valid and enforceable trust as claimed by the plaintiffs and hold the accounting phase of the case in abeyance until that issue was determined. Thereupon the cause was so tried. Ultimately the trial court sustained a demurrer to plaintiffs' evidence based on the ground it failed to prove a cause of action in their favor and rendered judgment sustaining the demurrer and taxing the costs against them. The appeal is from that order and judgment.

The lengthy pleadings filed by the parties are not in controversy and it would merely encumber the record without serving any useful purpose to detail their contents. It suffices to say they join issue on the question whether John Nicholas Dieter, in his lifetime, became the absolute owner of or held in trust certain real estate located in Clay county, Kansas, and now standing of record in his name, under and by virtue of two warranty deeds, dated December 6, 1926, and reciting a consideration of $1 and other valuable consideration, which were executed and delivered to him by his sister, Anna Margaret M. Cain, and his brother, Charles A. Dieter, since deceased, who, on the date of the execution of such instruments, were the owners of an undivided interest in the real estate therein described.

It appears from the record that the trial court based its ruling on the demurrer upon the premise the evidence adduced by the appellants was not sufficient to meet the rule of this court that an alleged trust must be shown by clear and satisfactory evidence. Since the propriety of that ruling is the all decisive issue involved on this appeal we first direct our attention to the evidence before the trial court at the time it was made. Omitting much that we regard as of little importance and summarizing the balance as briefly as the state of the record will permit it can be said the evidence adduced in support of appellants' position the real estate in question was held in trust by John Nicholas Dieter discloses the following facts:

John George Dieter, a resident of Clay County, died testate owning a considerable amount of real and personal property, sub-

ject to heavy encumbrances. By the terms of his will he gave his wife, who died on September 5, 1921, a life estate in his property and the remainder to his seven children in equal shares.

Dissension having arisen among the children with reference to the handling of the property belonging to the estate, four of such children, John Nicholas Dieter, Anna Margaret M. Cain, Charles A. Dieter and Frank H. Dieter, purchased the interest of the other three, namely, Justina Wilhelmina Conklin, Katherine C. Need, and Nellie B. Dieter, for the sum of $6,000 each. This agreement was entered into on July 6, 1922. From that date until the estate of John George Dieter was closed on December 7, 1922, and thereafter until the latter part of 1926, the purchasing children, with great difficulty, held the property left by their father practically intact. About that time John Nicholas Dieter, who had assumed the burden of doing so, both financially and otherwise, became dissatisfied with the situation and suggested a change in the arrangement. Eventually he obtained warranty deeds, absolute on their face, to all the real estate in which the three other children had had an interest and thereafter, so far as the record shows, assumed full supervision and control over the property until the date of his death which occurred on October 9, 1949.

So far our recital of the facts has been devoted to matters essential to an understanding of the general factual picture rather than those entitled to special significance in determining whether the appellants' evidence was sufficient as against the demurrer. Touching the latter and limited to conversations occurring and letters written shortly prior to and after execution of the warranty deeds, to which we have heretofore referred, the record discloses:

1. A letter from John Nicholas Dieter to Mrs. Charles A. Dieter written shortly before the deeds were executed which reads:

"My dear Olive: I am given to understand that you are the objecting in the matter of signing deeds Chas now has and that your objection is due to not understanding the object in view. I could talk to you and explain far better than I can write them, that was my object in wanting to see you folks last Sunday, but of course you were in Wichita and it was impossible. I can understand your point and appreciate the fact you are right in it. I have always maintained to Chas and Frank that you and Ina should be consulted more in the matter since your judgment also Nevadas, are as good if not better in business deals than Chas Frank and mine. They could never see it that way.

"The gist of the whole matter is this, we all realize we have made a grevious mistake in not closing this thing up as Need and Conklin wanted to 4 years ago. However there motive was not actuated by a feeling of justice or fair-

ness and in that they were wrong. Nevertheless we assumed the load and must see it through to the end. Crop conditions and all have been against us and we have all gone through 4 years of hell on account of it.

"I need not tell you how much money has been spend for attorneys fees and interest during this time. You know as well as I.

"We were all willing to sacrifice in order to follow out Fathers wish in the will and keep Frank in business. We have done so, far more than dad would have been willing we should. You and Chas have done your share and so have I.

"I never saw things as rosy as Frank and Chas but told them I was willing to do my part and believe I have more than done so. I have gambled my Equity with the rest and besides have put up nearly $10,000 in cash to keep things going. I can't keep that up allways. Nor are we making any money in doing so. The interest is eating us up. Demands for money are coming in and there is no money to meet it, if this is not raised soon suits for foreclosure will start and we will have the added expense of that besides things will be sold at a sacrifice as they allways are and none of us will get anything, what I propose to do and I am truthful in saying I don't want to do it, but must on account of being the only one able to finance it, is to have this property assigned to me and I will handle it according to our understanding and keep the whole thing in hands friendly to our interest rather than have hostile outside interests give us what they wish. You know I don't want a cent of money that don't belong to me and also that Chas and Frank don't have a better friend on earth than myself. I have backed both far farther than I ever will permit one of my boys to back the other in business. Lillie and I wanted both the boys last spring to assign their equities to us in order to protect them from the suits pending against them but they would not do it. Think how much safer they would be at present time if they had. I have tried for a long time to get them to put a price on things and sell them as the opportunity came and pay off these obligations, they have allways refused and in fact Chas has never expressed himself as what he though ought to be done one way or another. Now something must be done and there are only two ways possible 1st signing deeds as asked. If deeds are on record 4 months they are valid. If we do this this way we must assume a judgment of $700 to Salina people and another for $150 both of which are against Frank but must be assumed to get clear title. The 2nd was is to bring a suit in partition and try to buy the stuff in. The only reason I suggested the former is because it is cheaper and one could have it ready for market by this fall.

"One of these two courses I must persue and I want you to talk this over with Chas and tell me which you would suggest.

"In either event I want you satisfied. Naturally if the deeds are signed showing a willingness to cooperate in this affair whatever amount is left after debts are paid you will participate in.

"While if the other route is forced upon me of course we must accept the sale as final.

"Now the situation is so acute as to demand some move immediately.

"Now if you do not wish to sign the deeds please mail them to me at once.

"I hope I have explained everything it is very hard for me to write on account of lack of time. Our folks are well and I hope it is the same with you

folks. On closing I hope you will believe me when I say I am trying to do the very best for all of us and that it is an advantage to pull together instead of fight one another as in the past.

"Sincerely,

"J. N.

"Tell Chas the Peoples National are demanding payment on their $1600 note, ask him what he thinks we ought to do about it.

"Also the First National Bank is demanding about $3500 on Oakhill store building by Apr. 1, 1917. There is $900 interest due Feb. 1st on Farm mortgage I am needing help on all this."

2. Statements by Mrs. Cain, one of the appellants, to the effect that she had received a letter from John Nicholas Dieter in the latter part of 1926 of the same tenor as the one just quoted which she had sent to Chas. A. Dieter but which had become lost, that she relied upon the statements therein set forth and that except for the letter and the faith and confidence she reposed in the writer she would not have executed the deeds.

3. A letter from Nevada P. Dieter, widow and executrix under the will of John Nicholas Dieter, written shortly before the deeds were executed in which the writer advised Mrs. Cain that they had all deeds drawn up ready for Charles and Frank to sign that if they signed them they would send them on to her and that her husband had told Charles over the phone that Mrs. Cain came first after expenses were out, that he came next and the two boys could have what was left.

4. A letter dated January ＿＿, 1927, written by Nevada P. Dieter to Mrs. Cain stating in substance that her husband had told Charles over the phone that he would handle the property as best he could—that he would first take out his money and interest, then Mrs. Cain would be paid her share and if any was left he would divide with the boys equally.

5. Another letter written by Nevada P. Dieter to Mrs. Cain dated January 31, 1927, in which she enclosed the deeds, suggested that they be signed and returned, and then said:

"I think you fully understand that Dr. will take this over and pay up the indebtedness—and then will try to get a new loan on parcels and dispose of it if at all possible—He will then take out his money and interest if any over—then you are to get your share—and then if any is left he will divide with the boys—Now you understand this is his agreement with the boys and not in any way binding on me—for I would never give either one of them a penny—."

6. Testimony by Mrs. Cain, while testifying as a witness in her own behalf, on direct examination to the effect she would not have

signed the deeds had it not been for the promises made by her brother, that she had overheard conversations he had had with her husband, her daughter, and her son, in 1931 and in 1936 or 1937, in which she took no part, wherein he stated he had her interest in mind and would take care of her interests. Also answers made by her in response to questions on cross-examination as follows:

"Q. Now isn't it a fact, the real honest to goodness fact, Mrs. Cain, that when you folks deeded this property to Doctor Dieter in 1926, that you thought he was the owner of it and he became the owner of it? A. No.

"Q. What did you think was the effect of it? A. He was acting in the capacity of a trustee for the four of us. We were part owners."

. . . . . . . . . . . . . .

"Q. It is true, isn't it, Mrs. Cain, that when you folks gave Doctor Dieter those deeds in 1926 that you knew down deep in your innermost soul that you had no further right, title, or interest in that land? A. No, I did not. I signed them because of the assurance that he gave me that I had a fourth interest in it and that was the reason that I signed them."

. . . . .. . . . . . . . . .

"Q. All you ever expected to get out of it was some consideration if the doctor would sell it, is that it, from your testimony? A. I expected to get one-fourth of it.

"Q. You expected to get one-fourth of it? A. Whether he sold it or whether he wanted to pay me that."

. . . . . . . . . . . . .

"Q. You deeded it over to him? A. We deeded it over to him. The reason—I would never have deeded it to him if he hadn't assured me that I was interested one-fourth in that. I was to have as much as the other girls, and even if there wasn't anything left for him, I was to get my share."

7. Olive Dieter testified that neither she nor her deceased husband, Charles A. Dieter, would have executed the deeds had it not been for the letter heretofore quoted. On cross-examination she was interrogated as to whether in executing such instruments she intended to convey John Nicholas Dieter the land with the idea it would be his thereafter. In response she answered "no, it was his to take care of until prices got better and make settlement with the heirs."

8. Testimony by at least six other witnesses from which it can be fairly inferred that they had had conversations with John Nicholas Dieter or overheard conversations he had had with others in their presence wherein he recognized his sister Mrs. Cain had an interest in the estate and that he was taking care of her share. The

number of conversations testified to by some of these witnesses varies, some having had or heard but one conversation while others had or heard as many as three or four. Frank H. Dieter, one of such witnesses, stated that on many occasions his brother John Nicholas Dieter told him he wanted to get settled up with Mrs. Cain and that the last time he heard him make such a statement was at a time when his brother had been bedfast for several years and Mrs. Cain was at the home to visit him.

Appellants insist that in view of the foregoing evidence the trial court erred in sustaining the demurrer. Before giving consideration to the merits of this contention it seems advisable to first point out that we are called upon to review the sufficiency of evidence as against a demurrer, not to determine the propriety of a decision on the merits of the case. Therefore, it is well to keep in mind the well established principles governing a ruling on a general demurrer to evidence. This rule is well stated in *Staab v. Staab,* 160 Kan. 417, 163 P. 2d 418, also an action to establish a trust and where a like ruling was involved. At page 419 of the opinion in that case it is said:

". . . Such a demurrer tests only the legal sufficiency of the evidence. In passing on the demurrer courts cannot weigh evidence; they must disregard all unfavorable evidence and consider only evidence favorable to the parties adducing it; they must give full credence to the evidence adduced and construe all inferences which reasonably may be drawn therefrom in the light most favorable to the parties adducing it. If the evidence, considered in harmony with these principles, fairly tends to establish a cause of action or defense, the demurrer should be overruled. (*Zumbrun v. City of Osawatomie,* 130 Kan. 719, 721, 288 Pac. 584; *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, 110 P. 2d 810; *In re Estate of Bond,* 158 Kan. 776, 781-782, 150 P. 2d 843.)"

Heretofore we have called attention to the fact the trial court indicated it was sustaining the demurrer because the evidence was not sufficient to meet the rule that an alleged trust must be shown by clear and satisfactory evidence. This, we believe, is where the court first committed error. We have held that is not the test to be applied in determining the sufficiency of evidence as against a demurrer. See *Staab v. Staab,* supra, where the subject is discussed and it is held:

"It is true we consistently have held the evidence of an oral contract of this character pertaining to land must be such as to raise a 'convincing implication' that the contract was actually made and that it must satisfy the court of its terms. Simply stated, we have said such a contract must be established

by clear and satisfactory proof whether the evidence be direct or circumstantial. (*Bichel v. Oliver,* 77 Kan. 696, 95 Pac. 396; *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665; *In re Estate of Bond,* 158 Kan. 776, 150 P. 2d 343.) That character and extent of proof *is* properly required by a trial court after the case is submitted for final decision upon its merits. The evidence, however, need not reach that high degree of definiteness and certainty when tested by demurrer. When so tested the general principles applicable to a ruling on a demurrer, previously stated herein, control. . . ." (pp. 419 and 420.)

Nevertheless, since the reason given for a ruling on a demurrer is of little consequence if it can be otherwise upheld, there remains the question whether the evidence, viewed in the light of the rule to which we have heretofore referred, was sufficient to withstand the attack made against it.

Before analyzing the evidence it should be said that under the existing conditions and circumstances we see no reason for writing an essay on the subject of trusts. It suffices to say that generally speaking a trust, when not qualified by the word "charitable," "resulting," or "constructive," is a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it (Restatement, Trusts, Ch. 1, Sec. 2) and that an express trust may be created and must be deemed to be established by the evidence, when it is attacked by demurrer, if the evidence manifests an intention to create it, regardless whether that manifestation be established by written or spoken words or by conduct. (Restatement, Trusts, Ch. 2, Secs. 22, 24, Ch. 12, p. 1246.)

Tested by the foregoing rules, and given the benefit of all inferences to which it is entitled under the principle, governing a ruling on a general demurrer to evidence, we have little difficulty in concluding that the evidence adduced by appellants, regardless of what credence it may be entitled to when weighed by the trier of the facts, discloses that John Nicholas Dieter acquired title to the real estate in question under conditions and circumstances which not only manifested an intention, but obligated him, to hold it in trust and that thereafter, without ever having repudiated that obligation, he stated repeatedly that he so held it for at least one of the appellants. The result is that as against a demurrer the trust relied on by appellants was established and the trial court should have overruled the demurrer, proceeded with the cause and, after weighing all evidence

adduced by the respective parties, rendered such judgment as it deemed the facts and the law warranted.

In an attempt to forestall the foregoing conclusion appellees contend that even if appellants' evidence be held sufficient to establish a trust such evidence disclosed their right to enforce it was barred by the statute of limitations and laches. We do not agree. The statute of limitations did not begin to run until there was a breach of the contract by repudiation of the trust (*Staab v. Staab,* 158 Kan. 69, 145 P. 2d 447). The fact, as appellees suggest, the evidence disclosed that on August 5, 1938, Mrs. Cain wrote John Nicholes Dieter suggesting she should have something over his signature defining her interest and that he failed to reply thereto does not warrant this court in concluding, as a matter of law, that the trust was repudiated. Absent repudiation there is no merit to the contention the evidence shows the appellants' claims are barred by laches for it is conceded the real estate had not been sold and there is ample evidence in the record to the effect the trust was to continue until it was disposed of.

The judgment is reversed and the cause remanded for further proceedings. It is so ordered.