No. 40,314

JOSEPH HURLEY and HENRY J. ZIEMBA, *Appellees,* v. J. H. Painter, et al., *Defendants,* EMMETT FARRELL, *Appellant.*

(306 P. 2d 184)

Opinion filed January 12, 1957.

*A. W. Relihan, T. D. Relihan,* and *Terry E. Relihan,* all of Smith Centei, were on the briefs for the appellant, Emmett Farrell.

*William H. Stowell,* of Phillipsburg, argued the cause, and *Doris D. Stowell,* of Phillipsburg, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action in ejectment, partition, for an accounting, and to quiet title. We are concerned only with the ejectment and partition phases of the action.

Appellees Joseph Hurley and Henry J. Ziemba will be hereafter referred to as plaintiffs, and appellant Emmett Farrell as defendant. The remaining parties to the action are unimportant and have no interest in this appeal. So far as pertinent herein, the petition alleged that Ellen Farrell died June 3, 1952, the owner of the described real estate consisting of 240 acres of land and two city properties in Phillips county. She left surviving her as her only heirs at law her son Emmett Farrell, and her grandson Joseph Hurley, son of a predeceased daughter. No will of Ellen's had ever been admitted to probate, and more than one year had expired since her death, and the time for filing claims against her estate had expired. Plaintiff Joseph Hurley conveyed an undivided one-fourth interest in the described real estate, by quitclaim deed,

to plaintiff Henry J. Ziemba. Plaintiffs each owned an undivided one-fourth interest and defendant Emmett Farrell was the owner of an undivided one-half interest in the property described. It was further alleged that Emmett was in possession of the property, and wrongfully withheld possession from the plaintiffs. The petition alleged that he should be ejected and the real estate be partitioned according to the interests of the parties. The petition prayed for judgment accordingly.

Defendant Farrell answered, admitting Ellen's death; that he and plaintiff Joseph Hurley were her sole heirs at law; that he was in possession of the described real estate, and had not recognized any rights of plaintiff as claimed in the petition, and denied all further allegations.

After issues were joined, there was a pretrial conference ordered by the court at which it was admitted that Ellen Farrell at the time of her death (1) was the record title holder of the real estate involved; (2) plaintiff Joseph Hurley had made a conveyance of an undivided one-fourth interest in the real estate to plaintiff Henry J. Ziemba; (3) Emmett Farrell claimed all of the land involved by reason of an oral gift from Ellen Farrell during her lifetime; (4) that a will purporting to be Ellen's was offered for probate, which will devised the property in question to defendant Emmett Farrell, and probate of the will was refused; (5) that defendant claimed to have been in possession of the real estate since about 1948, and to have made permanent improvements thereon, paid the taxes, and paid liens that were on the property at the time he went into possession, and (6) that defendant lived in one of the city properties described, with his mother, Ellen, for many years prior to her death.

On the issues thus joined, and the stipulation, the case proceeded to trial by jury, with the trial court placing the burden of proof on defendant.

Defendant's evidence disclosed that plaintiff Hurley's mother died in 1932 at Denver, Colorado, when he was about four years of age; that his grandmother, Ellen, had not seen him since before his mother died. After the death of plaintiff's father in 1933, he was taken to Providence, Rhode Island, by his father's relatives. Occasionally on Christmas and Easter, Ellen received a card from him. Emmett testified that when his mother, Ellen, died in 1952 at the age of 89, he sent a notice to Joseph telling him of her death,

but he heard nothing from him and had not seen him for more than fifteen years. Emmett further testified that he went to Prairie View to make his home with his mother in the fall of 1942 until the date of her death. Previous to that, he commuted between Phillipsburg and Prairie View and looked after the furnace for his mother in the winter. The property in question consisted of 240 acres of land and two houses in Prairie View, one in which he and his mother lived. Exhibit No. 4 received in evidence reads:

"October 12th, 1948. This is to prove *that I have given* all my property to my son, Emmett Farrell and he is to take care of me as long as I live. He is to pay taxes and all bills and fir burial of me. He is to pay all debts on the land that he has not already paid.

"Signed, Ellen Farrell."
(Our italics.)

Emmett testified that he went into possession of the land in question in 1948 and continued to manage, occupy, and pay taxes on it. Evidence of checks and tax receipts was admitted to substantiate the payments. Also exhibits disclosed that Emmett redeemed certain of the property from tax sale. The evidence further disclosed that he leased the farm property and collected the rents; that he placed improvements on the property and expended some money on silt dams, erected a windmill, furnished fence posts, seeded more than 100 acres to alfalfa, paid the balance of the mortgage on the land, and exercised all rights of ownership over the property.

Two old acquaintances of the family testified that Ellen told them she had given all her property to Emmett. A Mr. Schra testified he farmed the land from 1938 to 1952. He originally leased the land from Ellen. However, after 1948 he leased it from Emmett and paid him the rent. A Mr. McCormack testified he rented the farm in 1952 and had all his dealings with Emmett, and never saw Ellen. Other witnesses testified Emmett had lived with his mother for nineteen years prior to her death, and that he was real attentive to, and took good care of her. To this and other evidence offered by defendant, plaintiffs interposed a demurrer on the ground that the evidence was insufficient to establish an oral gift of the real estate. In sustaining plaintiffs' demurrer to the evidence, the court said:

". . . I don't believe that the evidence of the defendant has met the standard of proof that is necessary in a case of this kind. I don't consider it is clear and convincing that there was a gift. . . . I believe there has been

a total failure to show expenditures of a substantial amount in permanent improvements of the property . . ."

From the trial court's order sustaining plaintiffs' demurrer and its order overruling defendant's motion for a new trial, defendant appeals, and insists that in view of the foregoing evidence, the trial court erred in sustaining the demurrer.

The question is whether the evidence was sufficient to establish defendant's prima facie case of an oral gift of real estate.

We are called upon to review the sufficiency of defendant's evidence as against a demurrer, not to determine the propriety of a decision on merits of the case after final submission. We will again emphasize certain well-established principles governing a ruling on a general demurrer to evidence. The instant demurrer tests only the legal sufficiency of defendant's evidence to make out a prima facie case. In one of our many recent cases, *In re Estate of Dieter*, 172 Kan. 359, 365, 239 P. 2d 954, a question somewhat similar to the one here involved arose, and the rule was reiterated. We stated:

"This rule is well stated in *Staab v. Staab*, 160 Kan. 417, 163 P. 2d 418, also an action to establish a trust and where a like ruling was involved. At page 419 of the opinion in that case it is said:

'. . . Such a demurrer tests only the legal sufficiency of the evidence. In passing on the demurrer courts cannot weigh evidence; they must disregard all unfavorable evidence and consider only evidence favorable to the parties adducing it; they must give full credence to the evidence adduced and construe all inferences which reasonably may be drawn therefrom in the light most favorable to the parties adducing it. If the evidence, considered in harmony with these principles, fairly tends to establish a cause of action or defense, the demurrer should be overruled. (*Zumbrun v. City of Osawatomie*, 130 Kan. 719, 721, 288 Pac. 584; *Robinson v. Short*, 148 Kan. 134, 79 P. 2d 903; *Myers v. Shell Petroleum Corp.*, 153 Kan. 287, 110 P. 2d 810; *In re Estate of Bond*, 158 Kan. 776, 781-782, 150 P. 2d 343.)'

"Heretofore we have called attention to the fact the trial court indicated it was sustaining the demurrer because the evidence was not sufficient to meet the rule that an alleged trust must be shown by clear and satisfactory evidence. This, we believe, is where the court first committed error. We have held that is not the test to be applied in determining the sufficiency of evidence as against a demurrer. See *Staab v. Staab*, supra, where the subject is discussed and it is held:

'It is true we consistently have held the evidence of an oral contract of this character pertaining to land must be such as to raise a "convincing implication" that the contract was actually made and that it must satisfy the court of its terms. Simply stated, we have said such a contract must be established by clear and satisfactory proof whether the evidence be direct or circumstantial. (*Bichel v. Oliver*, 77 Kan. 696, 95 Pac. 396; *Woltz v. First Trust Co.*, 135 Kan. 253, 9 P. 2d 665; *In re Estate of Bond*, 158 Kan. 776. 150 P. 2d 343.)

That character and extent of proof is properly required by a trial court after the case is submitted for final decision upon its merits. The evidence, however, need not reach that high degree of definiteness and certainty when tested by demurrer. When so tested the general principles applicable to a ruling on a demurrer, previously stated herein, control . . .' (pp. 419 and 420.)"

Applying the mentioned rules and giving defendant's evidence the benefit of all inferences to which it is entitled, we have little difficulty in concluding that the evidence adduced by him was sufficient to make out a prima facie case. The character and extent of proof required by the trial court is only applicable after the case is submitted for final decision upon its merits and not for the court's consideration on ruling on a demurrer to defendant's evidence. In *Schwindt v. Schwindt*, 61 Kan. 377, 59 Pac. 647, we held that less positive and unequivocal proof is required to establish the delivery of a gift from father to child than between persons not so related. It was also there stated that equity protects and enforces a parol gift equally with a parol contract for the sale of land where possession is taken in pursuance of the gift, improvements made, and the donee changes his situation and condition upon the faith of the gift.

In *Beeler v. Motter*, 33 F. 2d 788, it was stated that Kansas courts have uniformly held that a parol gift of land, accompanied by possession and followed by lasting and valuable improvements, is valid, and may be enforced against the donor or any one else. In short, it is irrevocable. The federal rule is essentially the same. (*Flanigan v. Waters*, 57 Kan. 18, 45 Pac. 56; *Baldwin v. Baldwin*, 73 Kan. 39, 84 Pac. 568, 4 L. R. A. [N. S.] 957.)

As heretofore related, Emmett went into possession of the property under oral gift in 1948, paid the taxes, the balance of the mortgage on the land, made improvements, exercised complete control, rented the land, and collected the rents. Moreover, on October 12, 1948, Ellen delivered to him a written memorandum stating, "this is to prove that *I have given* all my property to my son, Emmett Farrell . . ." (Italics supplied.) We are of the opinion that this and other evidence adduced was sufficient to make out his prima facie case of an oral gift of the land to him.

In our recent case of *Clark v. Larkin*, 172 Kan. 284, 239 P. 2d 970, we stated that a memorandum, in order to be enforceable under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his lawfully authorized agent, which states with reasonable certainty (*a*) each party

to the contract either by his own name, or by such a description as will serve to identify him, (b) the land or other subject matter to which the contract relates, and (c) the terms and conditions constituting the contract. Ellen's memorandum met these requirements. In view of all the evidence, it follows that the court erred in sustaining plaintiffs' demurrer to defendant's evidence.

Although plaintiffs invoked the jurisdiction of the district court in this action, they now contend that inasmuch as the record title to the real estate was in Ellen Farrell at the time of her death, defendant's claim thereto, if he had one, was against the estate of Ellen, as provided by the nonclaim statute (G. S. 1949, 59-2239) and, therefore, the trial court had no jurisdiction to determine defendant's alleged interest. It must be remembered that this was a partition action, and therefore covered by the provisions of civil procedure (G. S. 1949, Ch. 60, Art. 21). Sections 60-2101 and 60-2102 provide that the petition, among other things, must describe the property and the respective interests of the owners thereof. Section 60-2104 provides that the answers of defendants must state, among other things, the amount and nature of their respective interests. Section 60-2105 provides that after the interests of all the parties shall have been ascertained, the court shall make an order specifying the interests of the respective parties, and directing a partition to be made accordingly. Section 60-2114 provides:

"The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests."

The mentioned statute contains no prohibitions. Our decisions hold that in administering the provisions of this statute, the trial court has the same powers as were exercised by courts of chancery under equity practice, including full power to settle *all* questions involved, on just and equitable principles. We have held in an action involving ejectment, partition and accounting that there is nothing in the probate code which deprives the district court of the powers conferred on it by the code of civil procedure. (*Knutson v. Clark*, 169 Kan. 205, 210, 217 P. 2d 1067; *Ames v. Ames*, 170 Kan. 227, 229, 230, 225 P. 2d 85; *Kendall v. Kendall*, 171 Kan. 222, 231 P. 2d 212; *Peterson v. Peterson*, 173 Kan. 636, 641, 251 P. 2d 221.) Inasmuch as the mentioned authorities thoroughly discuss jurisdictional questions, similar to those raised in the instant case, it is unnecessary to further elaborate on this phase.

This being an equitable action, we feel that defendant properly stated in his answer a cause of action for relief. If defendant's position is sound, and is established by evidence, his ownership of the land in controversy will be determined and, by reason thereof, plaintiffs' claimed title would fall, because Ellen disposed of her title to the property before her death, and no part of it passed to her estate.

In view of what has been said, the judgment is reversed and the case remanded to the trial court with directions to set aside the judgment entered and grant a new trial.

It is so ordered.

HALL, J., not participating.